NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

BRISTOL SPRING MANUFACTURING CO., Respondent.

No. 776, Docket 77–4201.

United States Court of Appeals, Second Circuit.

Argued March 22, 1978.

Decided June 12, 1978.

Susan S. McDonald, Atty., N.L.R.B.,
Washington, D.C. (John S. Irving, Gen.
Counsel, John E. Higgins, Jr., Deputy Gen.
Counsel, Carl L. Taylor, Associate Gen.
Counsel, Elliott Moore, Deputy Associate
Gen. Counsel, Marjorie S. Gofreed, Atty.,
N.L.R.B., Washington, D.C., of counsel), for
petitioner.

William M. Cullina, Hartford, Conn.
(Murtha, Cullina, Richter & Pinney, Thomas
M. Cloherty, Hartford, Conn., of counsel),
for respondent.

Before KAUFMAN, Chief Judge, and
SMITH and MESKILL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The National Labor Relations Board
("NLRB") petitions this court pursuant to
§ 10(e) of the National Labor Relations Act,
as amended, 29 U.S.C. § 160(e), for enforce-
ment of an order requiring the Bristol
Spring Manufacturing Co. ("the Company")
to desist from unfair labor practices and to
bargain with, and provide necessary and
relevant information to, the United Auto-
mobile, Aerospace, and Agricultural Imple-
ment Workers of America, UAW Local 1251
("the Union"). 231 NLRB No. 85 (August
24, 1977). The petition of the NLRB is
denied for the reasons specified below.

In January, 1976, the Union filed a repre-
sentation petition with the Board request-
ing an election in one employee unit of one
of the Company's plants. An election was
held on April 2, 1976; 43 individuals voted
in favor of union representation, 36 against,
and seven ballots were challenged. The
Company subsequently filed objections to
the conduct of the election, alleging that
the Union unlawfully interfered with the
election in a number of specified ways.

The Regional Director of the NLRB con-
ducted an administrative investigation of
the Company's objections, during the course
of which all parties were able to submit
documentary evidence. No hearing was
held. On July 22, the Regional Director
recommended that the Company's objec-
tions be overruled in their entirety and that
the Union be certified as the bargaining
representative of the relevant employees.

The Company excepted to the Director's
report, requesting that the election be set
aside or, in the alternative, that a hearing
be held concerning contested issues of fact.
On October 6, a three-member panel of the
NLRB issued a Decision and Certification
of Representation adopting the findings
and recommendations of the Regional Di-
rector.

Subsequently, the Company refused to
furnish information requested by the Un-
ion, and refused to bargain with the Union,
arguing that the Union was not properly
certified because the election was invalid.
It argued further, and for the first time,
that an agent of the NLRB involved in the
case was subject to a conflict of interest.

The Union filed a complaint with the
NLRB pursuant to § 10 of the NLRA, 29
U.S.C. § 160, alleging that the Company
was guilty of an unfair labor practice.
Subsequently, a three-member panel of the

NLRB granted the motion for summary judgment made by the Board's General Counsel, finding the Company in violation of § 8(a)(5) and (1) of the NLRA, 29 U.S.C. § 158(a)(5) and (1). This petition followed.

*Discussion*

The Company refuses to bargain with the Union, arguing (1) that improprieties in the conduct of the representation election render that election invalid, and (2) that the Company was improperly denied a hearing on its objections to the conduct of the election.

The Company cites a number of Union practices which it alleges invalidated the representation election as a matter of law. The most serious of these charges, in our view, concerns Union payments to employees prior to the election. The record discloses that cash payments of five dollars ($5.00) were made to each of five employees six weeks before the election, and that payments of twenty dollars ($20.00) were made to four employees approximately four weeks before the election.[1] These payments were allegedly made to reimburse employees for time spent giving statements and attending Union meetings.

The Company cites *NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973) and the cases cited at footnote 6 of that opinion for the proposition that pre-election benefits of the kind rendered here represent an excessive economic inducement which invalidates representation elections. We do not read these cases, however, to establish a per se rule of invalidity. Rather, the cases establish that cash payments can, under some circumstances, improperly influence an election. Whether improprieties exist in any given case is a factual matter to be determined, in the first instance, by the trier of fact. See *NLRB v. Basic Wire Products, Inc.*, 516 F.2d 261, 264–65 (6th Cir. 1975); *NLRB v. Commercial Letter, Inc.*, 455 F.2d 109, 111 (8th Cir. 1972), *order enforced* 496 F.2d 35 (8th Cir. 1974).

The respondent's additional claims of improprieties in the conduct of the election are without substantial merit. The NLRB's findings of fact with respect to such claims are clearly supported by substantial, undisputed evidence, and the overruling of these claims was entirely appropriate.

The second major challenge posed by the respondent concerns the claimed right to a hearing on the respondent's objections to the conduct of the election. 29 C.F.R. § 102.69, which sets forth the procedures to be followed by a party objecting to an election, indicates that,

> The action of the regional director in issuing a report on objections or challenged ballots . . . may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which, in the exercise of his reasonable discretion, he determines may more appropriately be resolved after a hearing, he shall issue . . . [to] the parties a notice of hearing . . . . [29 C.F.R. § 102.69(d)]

It is settled law in this circuit that: [t]he conduct of representation elections is the very archetype of a purely administrative function, with no *quasi* about it, concerning which courts should not interfere save for the most glaring discrimination or abuse.

*NLRB v. Olson Bodies, Inc.*, 420 F.2d 1187, 1189 (2d Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237 (1971)]

But despite the broad discretion appropriately given to the NLRB in the conduct of representation elections, *Henderson Trumbull Supply Corp. v. NLRB, Region 2*, 501 F.2d 1224, 1228 (2d Cir. 1974); *NLRB v. Joclin Mfg. Co.*, 314 F.2d 627, 631 (2d Cir. 1963), it is nevertheless the case that a party is entitled to a hearing if, by prima facie evidence, it demonstrates the existence of "substantial and material factual issues" which, if resolved in its favor, would

---

1. Two employees received both payments, or a total of twenty-five dollars ($25.00); a total of seven employees received payments of some amount.

require the setting aside of the representation election. *NLRB v. Newton-New Haven Co.,* 506 F.2d 1035 (2d Cir. 1974); *Polymers, Inc. v. NLRB,* 414 F.2d 999, 1004–1005 (2d Cir. 1969), *cert. denied,* 396 U.S. 1010, 90 S.Ct. 570, 24 L.Ed.2d 502 (1970); *NLRB v. Joclin Mfg. Co., supra,* 314 F.2d at 631–32.

Such a hearing is required both by the due process clause of the fifth amendment to the U. S. Constitution, *Louis-Allis Co. v. NLRB,* 463 F.2d 512, 520 (7th Cir. 1972), *NLRB v. Bata Shoe Co., Inc.,* 377 F.2d 821, 825 (4th Cir.), *cert. denied,* 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967), and by the regulations of the NLRB itself, 29 C.F.R. § 102.69.

In a number of recent cases, this court has refused to enforce orders issued by the NLRB when disputed issues of fact were present, and when the parties were denied an opportunity to present evidence and cross-examine witnesses with respect to those factual issues. See, *e. g., NLRB v. Mercy College,* 536 F.2d 544 (2d Cir. 1976); *Henderson Trumbull Supply Corp. v. NLRB, Region 2, supra,* 501 F.2d 1224; *NLRB v. Joclin Mfg. Co., supra,* 314 F.2d 627.

The purpose of this hearing right is clear. Given the very limited discovery permitted in cases of this type, it is only when parties are given an opportunity to introduce evidence and examine witnesses that improprieties in the conduct of an election may be revealed. As in the case of grants of summary judgment pursuant to Fed.R. Civ.P. 56, it would be manifestly unjust to permit the entry of judgment (or, in this case, the enforcement of the NLRB order), when disputed issues of material fact remain to be settled. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 153–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975); *Judge v. City of Buffalo,* 524 F.2d 1321 (2d Cir. 1975); *Fournier v. Canadian Pacific RR,* 512 F.2d 317 (2d Cir. 1975); 6 *Moore's Federal Practice* ¶ 56.15.

The need for a hearing is particularly acute when, as here, an election is close, for in such a situation, "even minor misconduct cannot be summarily excused on the ground that it could not have influenced the election." *Henderson Trumbull Supply Corp. v. NLRB, Region 2, supra,* 501 F.2d at 1230.

 In the instant case, the Company avers that certain Union payments to Company employees so tainted the election as to render it invalid. The nature and timing of the Union payments are both material to the resolution of this proceeding, and undisputed. The purpose and effect of the payments are, however, unresolved. We cannot say, as a matter of law, that the payments were so small as to be of no legal significance. Whether and to what extent the payments affected the outcome of the election is a "substantial and material factual issue" which requires a hearing for its determination. Accordingly, we must deny the petition of the NLRB, and remand the case for a hearing on the effects of Union payments.