**NATIONAL LABOR RELATIONS BOARD, Petitioner in No. 82–3324,**

v.

**J–WOOD/A TAPPAN DIVISION, Petitioner in No. 82–3334.**

**Nos. 82–3324, 82–3334.**

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1983.
Decided Nov. 4, 1983.

Francis J. Connell, III (argued), Mark M. Wilcox, Drinker, Biddle & Reath, Philadelphia, Pa., for J-Wood.

William Wachter, Barbara Gehring (argued), Washington, D.C., for N.L.R.B.

Before GIBBONS, HUNTER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This is another in a series of cases we have decided since 1980 dealing with the circumstances under which the National Labor Relations Board (the Board) must conduct an evidentiary hearing on an employer's allegations of union misconduct in a representation election. *See, e.g., NLRB v. ARA Services, Inc.,* 717 F.2d 57 (3d Cir. 1983) (in banc); *Season-All Industries, Inc. v. NLRB,* 654 F.2d 932 (3d Cir.1981); *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292 (3d Cir.1981). The Board certified the Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC (the Union) as the bargaining representative of respondent J-Wood's production and maintenance employees on the basis of the Union's one-vote victory in a representation election held among J-Wood employees in August 1980. J-Wood (the Company) filed timely objections to this election alleging, inter alia, that union

agents made pre-election threats of reprisals against employees who failed to support the Union, as well as representations that the employees' jobs would be jeopardized after the election if they refused to support the Union. Following an ex parte investigation, the Board's Regional Director recommended that the objections be overruled, and the Board adopted this recommendation.

Because the Company refused to bargain with the Union, the Board found the Company in violation of section 8(a)(5) of the National Labor Relations Act (the Act). The Board now seeks enforcement of its bargaining order, and the Company has cross-petitioned for review, contending that it was under no obligation to bargain with the Union.[1] We agree with the Company that the Board abused its discretion in certifying the Union without first conducting an evidentiary hearing on J-Wood's election objection. Accordingly, we deny the Board's petition for enforcement of its bargaining order and grant the Company's cross-petition for review.

## I.

J-Wood is a division of Tappan, Inc., engaged in the business of manufacturing and selling custom kitchen cabinets, bathroom vanities, and shelving. The dispute in this case arises out of a representation election initiated by petition of the Union and conducted on August 8, 1980, among production and maintenance employees of J-Wood at its plant in Milroy, Pennsylvania. The Union won the election by a one-vote margin: 32 employees voted in favor of union representation and 31 voted against.

On August 15, 1980, the Company filed timely objections to the election alleging that the Union's misconduct had affected the outcome. Specifically, the Company alleged that three union organizers who were

employees of J-Wood had threatened employees Michael Habbershon and George Dobson with reprisals, principally loss of their jobs, if they failed to support the Union.[2] J-Wood asserted that, about ten days before the election, employee Earl Eby, a union agent, told employee Michael Habbershon that "most of the people in here like you, and if you want them to keep on liking you, I'd advise you to vote 'yes.'" Eby allegedly also told Habbershon that if he did not sign a union card and the Union won the election, Habbershon would be laid off "for not going with the Union." With respect to employee Dobson, the Company alleged that Tom Eckley, another in-house union organizer, had told Dobson that "[i]f the Union gets in and you don't sign up, you'll be out the door." J-Wood also alleged that later that same day employee William Ross, a union committeeman, likewise informed Dobson that "if you don't sign that paper, you'll be out the door." In its election objections the Company offered to prove that Ross, Eby, and Eckley were "known throughout the plant as agents of [the Union]," and in support of this contention supplied the Regional Director with an article from a union publication expressly identifying Ross as a member of the "plant committee" during the organizing drive.

Pursuant to 29 C.F.R. § 102.69(c), the Board's Regional Director conducted an ex parte administrative investigation into J-Wood's objections, which essentially confirmed the Company's allegations concerning the making of the statements. The Regional Director's report indicated that one rank-and-file employee claimed he was told by Earl Eby about two to three weeks before the election that "if he voted 'no' he would be laid off if the [Union] got in," and that "if he didn't sign a card and the [Union] was voted in, he would be laid off."[3] The Regional Director also reported that another employee claimed to have been told

**1.** The case is before this court pursuant to sections 10(e) and (f) of the Act, 29 U.S.C. §§ 160(e), (f).

**2.** The Company also accused the Union of misrepresentations in connection with a letter

mailed to J-Wood employees. The Company has not pursued this objection on appeal.

**3.** Eby reportedly also said that if the employee wanted to stay on the good side of those who favored the Union, he should vote yes.

by Eckley and Ross that "if the employee didn't sign a card he would be out of a job." The Regional Director also reported that employees Eby, Eckley, and Ross all denied having made the statements attributed to them and denied that they were members of any union organizing committee during the pre-election campaign.

Based on his investigation, the Regional Director recommended overruling the Company's election objections on the ground that Ross, Eby, and Eckley were not union agents and that therefore their statements, even if made, could not be attributed to the Union. Because the Regional Director found that the threats had not created an atmosphere of fear or violence that impaired the employees' freedom of choice, he concluded there was no basis for invalidating the election results. The Regional Director rejected J-Wood's request for an evidentiary hearing. Although the Company excepted to the Regional Director's report, the Board adopted the Regional Director's recommendations and certified the Union on March 24, 1981.

To obtain judicial review of the Board's certification order, J-Wood refused to bargain with the Union.[4] Thereupon the Board summarily found J-Wood in violation of section 8(a)(5) and 8(a)(1) of the Act, 29 U.S.C. § 158(a)(5) and (a)(1). The Board has filed an application with the court for enforcement of its bargaining order and the Company has cross-petitioned for review.

## II.

In the instant case the Company alleged that during the ten days preceding the election, union agents made threats to two employees that, in the Company's view, influenced the election results. These threats admonished the employees that they would lose their jobs after the election if the employees refused to support the Union. The Regional Director declined to conduct a

hearing on these charges because he determined that, assuming the statements were made as the Company alleged, they could not be attributed to the Union. The Regional Director accordingly concluded that the alleged threats did not warrant overturning the election. The Company contends that the Regional Director erred in resolving the election objections without an adversarial hearing. J-Wood argues that a hearing should have been held to resolve two "substantial and material factual issues" with respect to its objection: (1) whether the employees who made the threats were union agents, and (2) the making and impact of the threats.

### A.

To support its assertion that the Union was responsible for the threats that were made, J-Wood offered to prove that "Eby, Eckley and Ross were, in fact, known throughout the plant as agents of the [Union]." The Company produced an article in a union publication reporting on the outcome of the election explicitly identifying Ross as a member of the "plant committee" engaged in the organizational drive. The Regional Director concluded, however, that this was an insufficient basis to create a substantial and material factual issue concerning union agency. His report said:

No evidence was adduced during the investigation that either Eby or Eckley held any office with the [Union] or that they were in any way designated to act for the [Union]. With respect to Ross, the employer relies upon an article which appeared in a publication of the [Union] after the election, which listed Ross along with other employees as serving on the "plant committee." Ross denies being a member of any union organizing committee during the pre-election campaign. In any event, there is no evidence that the

---

4. Because a Board decision in a representation proceeding is not an appealable final order, J-Wood was only able to obtain judicial review of the Board's decision by the circuitous method of refusing to bargain with the Union, thereby exposing itself to unfair labor practice charges. On appeal from the Board's resolution of these unfair labor practice charges, this court may consider the dispute underlying the election. See *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292, 293 (3d Cir.1981).

[Union] authorized or condoned the alleged statements or that it was even aware of them. Moreover, even if the individuals to whom the statements were attributed may have been supporters of the [Union], the Board has held that even where the employee is the prime mover or principal organizer for a union, the union would not be responsible for threats made by such adherents. I find, therefore, that the alleged statements cannot be attributed to the [Union].

The Regional Director deemed it "unnecessary to decide whether Ross was in fact a member of the in-plant organizing committee prior to the election since, assuming *arguendo* that he was, my find[ing] that the remarks alleged to have been made by Ross cannot be attributed to the [Union] would be the same." The Regional Director and the Board evidently believed that membership in the organizing committee would be insufficient to make Ross a union agent.

■ With respect to the statements of employees Eby and Eckley, the Regional Director acted within his discretion in declining to conduct an evidentiary hearing to determine whether they were agents of the Union. The Company proffered no evidence to the Regional Director to support its contention that the acts of Eby and Eckley were attributable to the Union; the Company merely indicated a willingness to offer proof at the time of an evidentiary hearing that these individuals were "known throughout the plant as union agents." Thus, with respect to Eby and Eckley, J-Wood did not satisfy the requirement of *Anchor Inns, supra,* that its allegations be supported by a proffer of evidence that is not "conclusory or vague" but instead "point[s] to specific events and specific people." 644 F.2d at 296. Because J-Wood proffered no actual evidence to show the agency status of Eby and Eckley, there was no reason for the Regional Director to hold a hearing to resolve this question.

**5.** This regulation was amended in 1982 to provide that an evidentiary hearing "shall be conducted with respect to those objections or chal-

### B.

■ The statements by J-Wood employee Ross are another matter, however. Under the Board regulation applicable at the time of the representation proceeding in this matter, the Regional Director may direct an evidentiary hearing when a party objecting to an election raises "substantial and material factual issues." 29 C.F.R. § 102.69(d).[5] In *NLRB v. ARA Services, Inc.,* 717 F.2d 57 (3d Cir.1983) (in banc), we construed this regulation as vesting in the Regional Director discretion to determine whether or not a given issue of fact could be better resolved by an investigation rather than a hearing. In the instant case, the Regional Director conducted an ex parte administrative investigation that essentially confirmed the Company's allegations that Ross, like his fellow employees and in-house organizers Eby and Eckley, had made the threatening statements to Dobson. The Regional Director thus assumed that these threats had been made as alleged. The only issues that remained were whether the statements of Ross may be attributed to the Union and, if so, whether those statements may have influenced the outcome of the election. Based on his investigation, the Regional Director declined to hold an evidentiary hearing to inquire into these matters. We believe that in so doing the Regional Director abused his discretion.

*Anchor Inns, Inc. v. NLRB,* 644 F.2d 292 (3d Cir.1981), addressed the nature of the showing an employer must make to obtain a hearing on his objections to a representation election. In *Anchor Inns,* we held that an evidentiary hearing was required if— and only if—the objecting party made an adequate proffer of evidence to establish the existence of "substantial and material factual issues":

> In order to obtain an evidentiary hearing, the objector's proffer of evidence must prima facie warrant setting aside the election. The proffer may not be conclusory or vague; it must point to

lenges which the regional director concludes raise substantial and material factual issues."

specific events and specific people. On the other hand, an evidentiary hearing is not required when, if all the evidence proffered by the objecting party is accepted as true, no ground is produced which would warrant setting aside the election.

*Id.* at 296. If the evidence proffered by the Company supports its allegations that there is a basis for setting aside the election, then the Regional Director abuses his discretion in not granting a hearing. *See NLRB v. ARA Services, Inc., supra.*

In the instant case, to substantiate its exceptions to the Regional Director's report, the Company produced an article from a union publication purporting to identify the persons responsible for the Union's election success. The publication named Ross as a member of the "plant committee." Nonetheless, the Regional Director declined to conduct a hearing because he believed that even if Ross were a member of the plant committee, this would not necessarily make him a union agent. We recognize that membership on the plant organizing committee alone is insufficient to establish that Ross's acts may be imputed to the Union. When, however, the Union publicizes and identifies those who played a significant role in the election victory, and specially couples Ross's name as a member of the organizing committee with a statement in the next sentence identifying the union officers and members of "the Union staff involved in the drive," Ross is no longer a mere member of the organizing committee. The Union has recognized that he played more than an ordinary role in the election and, at this point in the proceedings, the Company is only seeking a hearing

to establish Ross's relationship to the Union and the impact of his threatening statements. The Company is not endeavoring to establish the merits of its claims. Its burden, therefore, is not to establish agency but only to proffer sufficient facts to warrant a hearing on the question of agency. In light of the threatening statements made by Ross, the post-election publication by the Union listing the persons "involved in the drive" to organize the plant, including the specific identification of Ross as a member of the organizing plant committee, is a significant piece of evidence to support the Company's allegations that Ross was a union agent or was known throughout the plant as a union agent.[6] Although the article is not proof of agency, taken with the evidence of the threats made by Ross, it is sufficient to warrant a hearing on the agency issue.

The Board has taken the view in a number of cases that the actions of employees who serve on an in-plant organizing committee are only attributable to the Union where there is additional evidence that the plant committee itself acts on the Union's behalf. Thus, in *Cambridge Wire Cloth Co.,* 256 N.L.R.B. 1135 (1981), *enforced,* 679 F.2d 885 (4th Cir.1982), the Board stated:

> Employee members of an in-plant organizing committee are not, simply by virtue of such membership, agents of their union for the purpose of making threats or statements.... Only where the in-plant organizing committee is itself shown to be an agent of the union will the conduct of committee members be imputed to the union.

256 N.L.R.B. at 1139 (footnote omitted).[7] *See Beaird-Poulan Division, Emerson Elec-*

---

**6.** We see no substance to the dissenting opinion's attempt to distinguish Ross's reputation from the fact of agency. Either express authority or apparent authority would suffice to make Ross's statements attributable to the Union.

**7.** In *Cambridge Wire* the Board found that the statements of one Robbins, a member of the plant committee, were not attributable to the Union, explaining:

> As to the agency status of the in-plant organizing committee, the evidence establish-

es that it was without any formal structure and was composed of any and all interested employees who gave their support voluntarily and without pay. Moreover, there were two paid union representatives staying in a local motel prior to the election, whose presence and availability were known to the employees. Under these circumstances, we find that the in-plant organizing committee was not an agent of the Union ....

*Id.* (footnotes omitted).

*tric Co. v. NLRB,* 649 F.2d 589, 594 (8th Cir.1981) (union not responsible for statements of pro-Union committee members); *Certain-Teed Products Corp. v. NLRB,* 562 F.2d 500, 509–10 (7th Cir.1977) (campaign activity alone does not establish the requisite close connection with the Union to make an employee a union agent); *Firestone Steel Products Co.,* 235 N.L.R.B. 548, 550 (1978); *Mike Yurosek & Sons, Inc.,* 225 N.L.R.B. 148, 149–150 (1976), *enforced,* 597 F.2d 661 (9th Cir.), *cert. denied,* 444 U.S. 839, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

On the other hand, in two cases the Fourth Circuit has imputed to the Union the actions of employees belonging to the "plant committee" where there was some additional evidence that the plant committee members had been "deputized" to act on the Union's behalf. In *NLRB v. Georgetown Dress Corp.,* 537 F.2d 1239 (4th Cir. 1976), the rank-and-file employees who committed certain acts of misconduct during the organizing campaign were held to be union agents because they were members of the in-plant organizing committee, and the evidence showed that the committee was the Union's only in-plant contact with the workers and that the members of the committee "in the eyes of the other employees were the representatives of the union on the scene and the union authorized them to occupy that position." *Id.* at 1244. Similarly, in *PPG Industries, Inc. v. NLRB,* 671 F.2d 817 (4th Cir.1982), the misconduct of members of the in-plant organizing committee was attributed to the Union because the evidence showed that the union organizer had requested the committee members to solicit support for the Union, to distribute union literature, to transport membership cards to the Union's office, and generally to serve as the Union's "eyes and ears" in the plant and to report on events in the plant during the election campaign. *Id.* at 819.

Concededly, in the instant case J-Wood proffered no evidence to the Regional Director concerning the role of the plant committee or its relationship to the Union. But we believe the Regional Director imposed too heavy a burden on J-Wood in deciding whether to hold an evidentiary hearing on the Company's election objections. The question before the Regional Director was not whether J-Wood had demonstrated Ross's agency status, but only whether the Company proffered adequate evidence to show that the agency question was a "substantial and material factual issue" under *Anchor Inns* that, if resolved in its favor, would require setting the election aside. We believe that evidence of the Union's post-election publication of Ross's membership in the organizing plant committee was a relevant and highly probative item of evidence of agency status that warranted an evidentiary hearing, especially when the election results depended upon only one vote.

Under *Anchor Inns* a party objecting to a representation election must produce adequate evidence to show that there is substance to its allegations and not mere rhetoric. But none of our cases contemplate that an employer is required to present sufficient evidence to establish that the objections must be sustained before it can obtain an evidentiary hearing. The whole purpose for the hearing is to inquire into the allegations to determine whether they are meritorious; it makes little sense to expect the employer to prove its case, especially without power of subpoena, to the Regional Director before a hearing will be granted.

It is important to remember that *Cambridge Wire, Georgetown Dress,* and *PPG Industries, supra,* were all decided after full evidentiary hearings on the election objections. By contrast, an employer considering whether to file election objections has little time to gather evidence. Objections to conduct affecting the election results must, by Board rule, be filed within five days of the election. *See* 29 C.F.R. § 102.69(a).[8]  In

---

8. Although the Board's rules require that an objection be filed within five days, the objecting party is not also required to produce evidence to support the objection within that five-day period. 29 C.F.R. § 102.69(a) provides that the party "shall, upon request, promptly furnish to the regional director the evidence available to it to support the objections."

addition, an employer seeking evidence in this kind of a case has access to very limited discovery, *NLRB v. Bristol Spring Manufacturing Co.*, 579 F.2d 704, 707 (2d Cir. 1978); it must proceed in an exceedingly careful manner to avoid being accused of coercive interrogation of employees. *See Johnnie's Poultry Co.*, 146 N.L.R.B. 770, 775 (1964), *enforcement denied*, 344 F.2d 617 (8th Cir.1965). Accordingly, it is unreasonable to expect the employer to document its objections with the kind of evidence that realistically could be uncovered only by subpoena and an adversarial hearing.[9] *Cf. NLRB v. Nixon Gear, Inc.*, 649 F.2d 906, 913–14 (2d Cir.1981) (Board abused its discretion in denying a hearing because employer had not produced evidence of intent that could only be uncovered through a hearing). All that *Anchor Inns* requires is that the "objector's proffer of evidence must prima facie warrant setting aside the election" and may not be "conclusory" or "vague" but must "point to specific events and specific people." J-Wood met this standard by naming the specific person who made the threatening statements and identifying the employee to whom they were made, facts confirmed by the Regional Director's investigation, and by producing the union article specifically identifying Ross as a member of the plant committee "involved in the drive." Thus, it was an abuse of

discretion for the Regional Director not to hold a hearing to determine Ross's status.

## III.

■ The Board contends that even if the Company raised a substantial and material question of union agency with respect to Ross, it nonetheless was not entitled to a hearing because, irrespective of his status, Ross's statement could not have influenced the election results.

The Regional Director's investigation essentially confirmed the Company's allegation that Ross told employee Dobson that if the Union came in and Dobson refused to sign a card, Dobson would lose his job. ("If you don't sign that paper, you'll be out the door.") Ross allegedly also asked Dobson if he understood that if the Union prevailed in the election it would not allow anyone to work at J-Wood without being a union member. If Ross actually made the statement Dobson reported,[10] it was a misrepresentation, because the Union could not make continued employment conditional upon union membership unless it negotiated a union security clause with the Company. Without a hearing, it is difficult to know whether and how Ross's statements might have influenced Dobson's vote or the votes of other bargaining unit employees to whom Dobson might have relayed the state-

Nonetheless, since the objection itself must be accompanied by a statement of reasons, the five-day rule does impose severe time constraints on an objecting party.

9. The purpose of proving that Ross and his committee were known in the plant to be union agents was not to establish his reputation as suggested by the dissent but to establish apparent authority. An adversarial hearing could provide evidence that might not otherwise be available to the employer without power to subpoena employees and union officials and the opportunity to cross-examine. For example, some questions that might be answered at such a hearing that would shed light on agency or apparent agency are whether Ross and the in-plant organization committee appeared in the eyes of the other employees to represent the union on the scene and whether the union fostered such appearance of authority. The post-election publication may be read to indicate that the Union requested Ross to solicit sup-

port for the Union. If so, what instructions did the Union give him and did Union officers encourage, know, or condone the threats Ross made to Dobson? Did the Union authorize Ross to distribute union literature and transport the union membership cards to the union office? Did Ross report on election and campaign developments to the Union and to what extent did he serve as the eyes and ears of the Union during the election campaign? Did union officers represent to plant employees or create an impression in the plant that the in-plant organizing committee was acting in behalf of the Union during the election campaign or that they were acting under union direction or with their blessing in the election campaign?

10. Although Ross told the Regional Director that his comment was in the context of a discussion of union security clauses, the Regional Director was required by *Anchor Inns* to credit Dobson's version in deciding whether to hold a hearing.

ment.[11] We can do nothing more than speculate as to whether the remarks might have helped or hurt the Union's organizing effort. In view of the Union's one-vote margin of victory in the election, we believe it was essential for the Regional Director to conduct a hearing to inquire into the effect of Ross's statements. We agree with the Second Circuit that the necessity for a hearing is particularly great when an election is close, for under such circumstances, " 'even minor misconduct cannot be summarily excused on the ground that it could not have influenced the election.' " *NLRB v. Bristol Spring Manufacturing Co., supra,* 579 F.2d at 707 (quoting *Henderson Trumbull Supply Corp. v. NLRB,* 501 F.2d 1224, 1230 (2d Cir.1974)). *See Wells Fargo Guard Service v. NLRB, supra,* 659 F.2d at 370–71; *Monmouth Medical Center v. NLRB,* 604 F.2d 820, 823 n. 4 (3d Cir.1979). In the instant case there was a substantial and material factual issue concerning the potential impact of Ross's statements on the election results, and the Regional Director abused his discretion by failing to hold a hearing.[12]

### IV.

We therefore hold that the Regional Director should have held an evidentiary hearing on J-Wood's election objection to consider whether William Ross's actions were attributable to the Union and whether Ross's statements may have influenced employees' freedom of choice in the election. We will deny enforcement of the bargaining order against J-Wood and grant the Company's petition for review. The case will be remanded to the Board for further proceedings not inconsistent with this opinion.

JAMES HUNTER, III, Circuit Judge, concurring:

Judge Rosenn writes that the issues remaining after the Regional Director's investigation were "whether the statements of Ross may be attributed to the Union, and, *if so,* whether those statements may have influenced the outcome of the election." (emphasis added). He finds that these issues could be properly resolved only through an evidentiary hearing, and that the Regional Director abused his discretion in failing to order one. He finds no abuse of discretion in the Regional Director's failure to order an evidentiary hearing concerning the threats made by employees Eby and Eckley because J-Wood offered no proof of their union agency. Judge Rosenn's opinion therefore might suggest that union agency must be found before a hearing to consider the potential impact of employee threats on an election is required. While I agree that union agency is a pivotal factor in this case, I do not believe that union agency must necessarily be found before employee threats require an evidentiary hearing. I write separately, therefore, to emphasize that the essential inquiry is whether the election results reflect the employees' true

---

**11.** The Board has frequently shown a willingness to assume that threats made to one employee will be disseminated to other employees. *See United Broadcasting Co. of New York, Inc.,* 248 N.L.R.B. 403 (1980); *Continental Inv. Co.,* 236 N.L.R.B. 237 (1978).

**12.** In its brief, counsel for the Board makes the astonishing assertion that "threats of job loss by union agents do not warrant setting aside an election." Brief at 22 n. 12. Although we recognize that in certain situations a threat of this nature may have little impact on voting behavior, or may even induce employees to vote against a union, there is no way to judge the effect of a threat without inquiring into the circumstances surrounding it. The cases cited by the Board to support its position are readily distinguishable from the instant case. In *NLRB v. Bancroft Mfg. Co.,* 210 N.L.R.B. 1007,

1014 (1974), *enforced,* 516 F.2d 436, 444 (5th Cir.1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976), the administrative law judge found—after a full evidentiary hearing on the employer's election objections—that the employer had put to rest the union's insinuation that employees who did not support the union in the election might lose their jobs, and that employees could evaluate the statements as mere campaign propaganda. In *NLRB v. Sumter Plywood Corp.,* 535 F.2d 917 (5th Cir. 1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977), the court affirmed the Board's decision not to hold a hearing to determine the effect of the union agent's threats, because the union had won the election by an overwhelming margin. In the instant case, the Union won by only a single vote.

and uncoerced preferences; the question of union responsibility becomes important only when it informs that inquiry.

It is well settled that, "[a] representation election should be 'a laboratory in which an experiment may be conducted under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees.'" *Monmouth Medical Center v. NLRB,* 604 F.2d 820, 824 (3d Cir.1979) (quoting *General Shoe Corp.,* 77 NLRB 124, 127 (1948)). We set aside elections not to punish a culpable union or employer, but to protect the employees' right to free choice.

The Board and the courts have emphasized that the existence of a coercive atmosphere, regardless of how such an atmosphere came about, is the critical fact upon which the Board should focus in determining whether a free and fair election was impossible. *Diamond State Poultry Co.,* 107 NLRB 3, 6 (1953); *Cross Baking Co. v. NLRB,* 453 F.2d 1346, 1348 (1st Cir.1971).

*Zieglers Refuse Collectors, Inc. v. NLRB,* 639 F.2d 1000, 1004–05 (3d Cir.1981). Thus, the agency of an employee making threats is not necessarily an issue to be resolved before inquiring into the effect of those threats. It is an issue that is important only to the extent that it sheds light on the effect of the threats. *See, e.g., id.* at 1006; *Methodist Home v. NLRB,* 596 F.2d 1173, 1183 (4th Cir.1979); *Home Town Foods v. NLRB,* 379 F.2d 241, 244 (5th Cir.1967).

In this case, union responsibility is the crucial factor in assessing the fairness of the election. The regional director determined that the employees allegedly making threats were not union agents. He then determined that such threats, if made by mere employees, would not create a coercive atmosphere. He did not consider whether the threats would have created a coercive atmosphere if made by union agents. Because J-Wood presented evidence that Ross was a union agent, his status is an unresolved "substantial factual issue." Furthermore, it is an unresolved fact of critical significance. The threats made in this case were stark and unequivo-

cal, and forecast consequences about which a union agent would be presumed to have special knowledge. Considering that the union won the election by only a one-vote margin, it would clearly be an abuse of discretion to refuse to hold a hearing on the effect of these threats if they were made by a union agent.

I agree that J-Wood raised a serious enough question of Ross's agency to make the NLRB's refusal to hold a hearing on this issue an abuse of discretion. I also agree that it would be an abuse of discretion to refuse to hold an evidentiary hearing on the effect of those threats if Ross is found to have been a union agent. Consequently, I agree with Judge Rosenn's conclusion that this case should be remanded for an evidentiary hearing. Finally, so long as the primacy accorded the union agency question is understood to be warranted by the facts of this case, but not required in every case, I join in Judge Rosenn's opinion.

GIBBONS, Circuit Judge, dissenting:

This case is before us on the petition of J-Wood/A Tappan Division (J-Wood), an employer, for review of a National Labor Relations Board decision and order holding that J-Wood violated section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) (1976), by refusing to bargain with Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC, a certified bargaining representative. J-Wood refused to bargain in order to obtain judicial review of its contention that the Board erred in certifying the bargaining representative without ordering an evidentiary hearing on its objections to the election.

Judge Rosenn's opinion announcing the judgment of the court proposes to hold that an adversarial evidentiary hearing be held (1) to determine the status of employee William Ross as a union agent, and (2) to determine whether, if Ross was a union agent, his remarks to employee Dobson might have influenced the outcome of the election. Judge Hunter, while joining in a judgment remanding for an evidentiary hearing on both issues, suggests that Ross'

agency status may not be dispositive. Their positions in these respects are predicated on the proposition that an adversarial evidentiary hearing must, as a matter of law, be held whenever we conclude that an employer's objections raise a substantial and material issue of fact.

In *NLRB v. ARA Services, Inc.,* 717 F.2d 57 (3d Cir.1983), a majority of this court sitting *in banc* rejected the position that we review election certification issues by the standard applicable to review of grants of summary judgment under Fed.R.Civ.P. 56.[1] Our review is confined to determining (1) whether the regional director abused the discretion vested in him by 29 C.F.R. § 102.69(d) to report on objections to the conduct of elections on the basis of an administrative investigation, and (2) whether the Board, in reviewing the report of the regional director, abused its discretion in passing upon exceptions to the regional director's report. Consistency with controlling precedent in this court demands that we confine review of the Board's order in this case to that highly deferential standard.

The Judges in the majority, while paying lip service to the abuse of discretion standard, have in fact reviewed the agency record as if they were exercising the plenary review appropriate for Rule 56 summary judgments by the district courts. For them, failure to hold a hearing when a material fact issue appears is an abuse of discretion as a matter of law. That scope of review is entirely inconsistent with the *ARA* decision. Their holding is simply a disingenuous way of disregarding the *ARA* holding, and a patent disregard of our rule that a panel may not overrule a third circuit precedent.

Under *ARA* it is appropriate that I consider whether either the regional director or the Board committed an abuse of discretion in this instance, for if there were an abuse

of discretion I would agree that enforcement should be denied.

The majority holds, and I agree, that remarks attributed to employees Ely and Eckley provide no basis for setting aside the election. Judge Rosenn notes as well that J-Wood has abandoned its objection to the election based upon pre-election correspondence from the Union. Thus what remains is the contention that the regional director and the Board abused their respective discretions in concluding that no evidentiary hearing was required with respect to pre-election remarks attributed to employee Ross.

To put the Ross remarks in context, we start with the observation that his name is not mentioned in J-Wood's August 14, 1980 objection to the election. It first appears in J-Wood's September 10, 1980 position paper, which in relevant part says:

> Employee George Dobson was also threatened by in-house organizers. Two or three days before the election, Mr. Dobson was approached by organizer Tom Eckley, who told him, "If the Union gets in and you don't sign up, you'll be out the door." Later that day, Mr. Eckley and organizer Bill Ross approached Dobson and Ross repeated essentially what Eckley had said earlier. Then Ross said, "If you don't sign that paper, you'll be out the door." Mr. Dobson believed, based upon these statements, that if he refused to join the union, he would lose his job.

App. at 9a.

Neither in J-Wood's objection to the election nor in its position paper was any assertion made that Dobson repeated the remarks attributed to Ross to any other employee. Rather, J-Wood's position paper urged that "[i]t is clearly reasonable to assume that the threats were common knowledge in the plant." App. at 11a. No factu-

---

1. In *ARA Services, Inc.* there is no opinion of the court because Judge Adams concurred in the judgment. For present purposes, however, there is no substantive difference between the *ARA* plurality opinion and Judge Adams' concurring opinion. *See ARA Services, Inc.,* 717

F.2d at 69 (Adams, J., concurring) ("[u]nless procedural preference rises to the level of constitutional imperative, however, the decision whether to utilize an investigation or to employ a full hearing is best left to the discretion of the NLRB").

al basis was set forth for the reasonableness of such an assumption. Absent such a basis it was not an abuse of discretion for the regional director to decline, if he did so, from making that assumption.

J-Wood's position paper also addressed Ross' status as a union agent, observing:

> You have expressed concern about the fact that you have uncovered no direct proof that ... [Mr.] Ross [was an] agent[ ] of the ACTWU. We submit, however, that in a case such as this, where the election was decided by only one vote, it is entirely proper to set aside the election even without direct proof of union agency.

App. at 12a. Thus it was J-Wood's position during the regional director's investigation that Ross' agency status was irrelevant, a position that Judge Rosenn correctly, albeit tacitly, rejects. Only as an afterthought, in a footnote to its September 10, 1980 position paper, did J-Wood assert that "[t]he Company will be prepared to prove at a hearing, if necessary, that ... Ross [was], in fact, known throughout the plant as" a union agent. App. at 13a. The language in the footnote was evidently chosen with care. J-Wood carefully refrained from saying that it knew of any evidence that Ross was in fact a union agent. The employer's basic position was that regardless of Ross' agency status, the threat made by him was as a matter of law sufficient to set aside the election.

**2.** The publication, Labor Unity, reported the outcome of the election. That short news item also reported:

> Wood employees contacted the union in May, and a majority quickly signed union cards....
>
> Serving on the plant committee along with [employee] Belk were Harvey Dobson, Larry George, Willard Ham, Robert Kalbel, George Leacy, Michael Ross, William Ross, Ronald Scutt, and David Smoker. Union staff involved in the drive included Vice Pres. Bruce Dunion, ACTWU Reg. Dir. Joseph Coponi, Asst. to Reg. Dir. Tony Sedor, and Int'l Reps. George Mikula, Romeo Esposito, and Thomas Hummel.

App. at 47a. Thus, the news item itself made a clear distinction between the acknowledged un-

During the course of the regional director's investigation J-Wood produced a union newsletter, which appeared after the election, describing Ross, along with other employees, as having served on the "plant committee." [2] The company proffered no other evidence bearing on Ross' agency status, and no reason why, if any such evidence might exist, it could not be obtained by investigative techniques rather than in an adversarial hearing.

The regional director did investigate the allegation that Ross was a union agent. In his Report on Objections he observed:

> With respect to Ross, the Employer relies upon an article which appeared in a publication of the Petitioner [union] after the election, which listed Ross along with other employees as serving on the "plant committee." Ross denies being a member of any union organizing committee during the pre-election campaign. In any event, there is no evidence that the Petitioner authorized or condoned the alleged statements or that it was even aware of them. Moreover, even if the individuals to whom the statements were attributed may have been supporters of the Petitioner [union], the Board has held that even where the employee is the prime mover or principal organizer for a union, the union would not be responsible for threats made by such adherents.[1] I find, therefore, that the alleged statements cannot be attributed to the Petitioner [union].[2]

ion agents and the J-Wood employees who had circulated union authorization cards. While the newsletter reported that Ross served on the in-plant committee, it offered no probative evidence of the relationship between the in-plant committee and the union. Even under the incorrect standard of review applied by Judges Rosenn and Hunter, therefore, the newspaper item would be insufficient to create a material issue of fact as to Ross' agency status. Rather, it would create a material issue of fact only as to Ross' membership on the in-plant committee.

Judge Rosenn is simply wrong in his assertion that the newspaper clipping is a probative item of evidence of Ross' agency status. 720 F.2d at 315.

[1] *American Enka Co.,* 231 NLRB 1335, 1343; *Bufkor-Pelzner Division Inc.,* 197 NLRB 950; *Bronze Alloys Company,* 120 NLRB 682.

[2] In view of the aforesaid cited cases (footnote 1), I deem it unnecessary to decide whether Ross was in fact a member of the in-plant organizing committee prior to the election since, assuming *arguendo,* that he was, my find[ing] that the remarks alleged to have been made by Ross cannot be attributed to the Petitioner [union] would be the same.

App. at 21a.

It is clear beyond question, therefore, that the regional director assumed for purposes of his Report on Objections that Ross may have been a member of the in-plant organizing committee. Thus a hearing addressed to that factual issue would add nothing relevant to our decision.

Judge Rosenn observes that "[c]oncededly, in the instant case J-Wood proffered no evidence to the regional director concerning the role of the plant committee or its relationship to the Union." 720 F.2d at 315. He contends, however, that the employer raised a substantial material factual issue as to the agency status of the members of the in-plant committee. To the contrary, the employer never actually contended during the investigation that Ross *was* a union agent. Its basic position, noted above, was that his agency status was irrelevant. The most that was proffered in the footnote to the September 10, 1980 position paper was that it was prepared to prove at a hearing that Ross was "known throughout the plant as a union agent." Ross' reputation, not the fact of agency, was all that was tendered. In view of this insufficient proffer of evidence, it was not an abuse of discretion for the regional director to decline to hold a hearing.

Disregarding the plain language of the footnote reference to Ross' reputation in the plant, Judge Rosenn proceeds to construct a sophistical argument as to why the employer should be excused from making some sort of factual showing of the fact of agency. His opinion notes that the employer has little time, that discovery is limited, and that the National Labor Relations Act inhibits interrogation of employees. 720 F.2d at 315–16. These factors do not excuse the employer's failure to proffer evidence of the fact of agency. Moreover, they have little relevance to these proceedings. J-Wood's position paper represented that it would be prepared at a hearing to prove its allegations about Ross' reputation as a union agent. Obviously the employer had timely knowledge, without the necessity for interrogation or discovery, of the fact of that reputation. In addition, any inhibition on interrogation is irrelevant when the issue is union agency status, since inquiry can be directed, with no danger of violating the National Labor Relations Act, to non-employee union officials for that purpose.

Patently the news item in the Union Leader, quoted in the margin, does not raise a fact issue as to Ross' agency status. Patently the vague footnote reference to Ross' reputation in the plant fails to point to specific events or specific evidence which might establish such status, and fails to tender any witness even to his reputation. Considering that it was J-Wood's basic position that Ross' agency status was irrelevant, and that the vague, offhand footnote reference to Ross' reputation as a union agent refrained even from proffering proof that he was in fact an agent, we cannot, applying the scope of review to which *ARA* confines us, hold that the regional director was required to hold an evidentiary hearing on agency status. There was no abuse of discretion in taking J-Wood at its word that agency status was not relevant. The vague footnote never fairly tendered Ross' agency status as a factual issue.

That the question of the need for an evidentiary hearing on Ross' agency status was never fairly tendered to the regional director is confirmed by J-Wood's Exception to the Regional Director's Report. The Exception states in conclusory language:

> 3. J-Wood excepts to the Regional Director's failure to grant a hearing pursuant to 29 C.F.R. § 102.69(d).
>
> The grounds for this exception are set forth in the accompanying brief.

App. at 28–29a. The accompanying brief refers to Ross only once:

After lunch, in the presence of this J-Wood witness [Dobson], Mr. Eckley told William Ross, another Union organizer, what he had said to the witness before lunch. Mr. Ross agreed with Mr. Eckley, stating that if the witness failed to sign a card, he would be out of a job.

App. at 33a. The newspaper clipping on which J-Wood relies states that prior to the election, employees solicited union authorization cards. These were used, when the union had a majority of signatures in the bargaining unit, to petition for a Board supervised election. J-Wood's exception, therefore, appears to refer to conduct by Ross in the period when *employees* were soliciting cards for the purpose of petitioning for an election. There is no suggestion in the brief in support of the Exception that Ross was at that time anything but an in-plant organizer, a fact that the regional director assumed. Moreover J-Wood in that brief reconfirmed its basic position that Ross' agency status is irrelevant, arguing:

> The Regional Director found no direct[ ] proof that ... [Mr.] Ross [was an] agent of the Union. J-Wood submits, however, ... where the election was decided by only one vote, it is entirely proper to set aside the election even without direct proof of union agency.

App. at 37a. Nowhere in that brief did J-Wood urge that it lacked time to establish Ross' agency status, that it needed discovery for that purpose, or that the National Labor Relations Act inhibited the development of the facts. Instead, again in a footnote, it reasserted its position that "J-Wood will be prepared to prove at a hearing that ... [Mr.] Ross [was], in fact, known throughout the plant as [an agent] of the Union." App. at 38a. Thus the exception tendered no more than evidence, from unnamed sources, apparently already available to J-Wood, of Ross' in-plant reputation. The conversation between employee Dobson and employee Wood apparently took place during the card soliciting stage, and no details ever had been tendered to the regional director about the time when Ross' reputation as a union agent arose, or about

the facts upon which that reputation was based. The union newspaper certainly did not contribute to that reputation in any relevant period since it was published after the election. Nowhere in the Exceptions or in the brief in support thereof does J-Wood urge explicitly that there is a material fact issue as to Ross' agency status. Nowhere does J-Wood refer to any lines of inquiry which it suggested to the regional director bearing on that status other than the carefully chosen and deliberately vague reference to his in-plant reputation.

The regional director and the Board both assumed, arguendo, that Ross was a member of the in-plant organizing committee, even though he denied it. The newspaper clipping suggests no more than this. Thus on the issue of Ross' agency status our inquiry narrows down to the question whether, when all that was presented to the regional director was a throwaway line in a footnote in a brief mentioning his in-plant reputation, which carefully omitted any explicit reference to the fact of agency, the regional director and the Board abused their respective discretions in failing to hold or order a hearing on that issue. Since J-Wood's basic position was that agency status was irrelevant, since no explicit request for an evidentiary hearing on that status was made at either level of the agency proceeding, and since nothing but a vague mention of reputation, rather than fact of agency, ever surfaced, no abuse of discretion occurred. Indeed, on the record before us no occasion was ever fairly presented for the exercise of discretion as to an evidentiary hearing on Ross' agency status.

Because J-Wood presented no basis for the exercise of the regional director's discretion to hold an evidentiary hearing on Ross' agency status, the basic premise of Judge Rosenn's opinion is entirely unsupportable. His opinion, proceeding from the unsupportable premise that such a hearing was required, concludes in Part III B, that a hearing was also required to determine the effect of Ross' remarks upon Dobson and other employees. Judge Hunter does not

rely even on that unsupportable premise. But both Judge Rosenn and Judge Hunter ignore the scope of review mandated by the *ARA* decision on this second issue as well.

There can be no material dispute over whether the statements attributed to Ross were actually made to Dobson, because the regional director proceeded on the assumption that they were.[3] The regional director discounted their potential significance, however, reasoning:

> In the first place, I note that the conduct did not involve any physical violence or relate to matters within the Petitioner's [union's] control. With respect to similar statements, the Board has held that employees could reasonably be expected to evaluate such statements as non-coercive and not as threats. I further note that no evidence was proffered or disclosed by the investigation to show that any employee had any reason to believe that the Employer favored the Petitioner [union] and would be disposed to discharge any employee for voting *against* the Petitioner. . . .

App. at 22a (footnotes omitted) (emphasis in original). The last sentence in the quoted language shows the regional director's keen appreciation of the precise remarks attributed to Ross. Ross is alleged to have told Dobson that if he did not sign a card he would be out of a job. The cards were solicited before the representation election, probably for the purpose of obtaining an election. The regional director notes, quite correctly, that such a threat, if it was in fact made, would be a reason for a union opponent voting *against* the union rather than in its favor.

Since the regional director assumed, arguendo, that Ross made the threat attributed to him, I search both opinions in vain for the disputed issue of material fact to which the evidentiary hearing which they order will be addressed. Certainly the regional director is correct that no evidence was proffered or disclosed in the investigation suggesting that J-Wood would retaliate against an employee who refused to sign an authorization card. The witness Dobson was interviewed. What could he be asked in an evidentiary hearing that he was not asked in the course of the investigation? Dobson did not say that he voted for the union out of fear of retaliation. He did not even say that he disclosed his conversation with Ross to any other employee. Judge Rosenn urges that "there is no way to judge the effect of a threat without inquiring into the circumstances surrounding it." 720 F.2d at 317 n. 12. What additional circumstances are referred to? The regional director assumed that employee Ross, in the presence of employee Eckley, told employee Dobson that if he did not sign a union card he would be out of a job. The only remaining question which could be asked is how Dobson himself voted. Perhaps the judges in the majority mean to suggest that in every close election the regional director must examine how specific employees voted. The law, fortunately, is otherwise. Board elections are secret ballot elections. 29 U.S.C. § 159(c)(1) (1976). *See NLRB v. A.J. Tower Co.,* 329 U.S. 324, 331–32, 67 S.Ct. 324, 328–29, 91 L.Ed. 322 (1946). Thus the only information, even arguably relevant, in addition to the facts which the regional director assumed, could not lawfully be disclosed.

Thus, discussion in the majority opinions of the need for an evidentiary hearing as to how the statements attributed to Ross may have influenced the election is in reality a subterfuge. Neither Judge in the majority appears ready to say that the Board erred as a matter of law in approving the regional director's conclusion that such a threat would be more likely to produce a vote against than in favor of the union. That conclusion is quite clearly within the range of discretion entrusted to the Board under

---

**3.** The Report on Objections states:

Assuming, *arguendo,* that the statements were made as testified to by the two witnesses [Ely and Dobson] in support of the objections, I find that such statements cannot be said to have created such an atmosphere of fear or of violence as to have impaired the employees' freedom of choice in the election. App. at 21–22.

section 9 of the Act. A vote against the union *would not* affect the outcome. It is virtually certain that at a hearing the regional director will conclude that the Ross statements were made, but that they *did not* affect the outcome. But delay in Board certification means delay in the obligation to bargain collectively. Thus the remand for a meaningless hearing is as useful for J-Wood as if the Judges in the majority had held that the Board erred as a matter of law. Before certain panels of this court, any route to the result that an employer need not bargain collectively appears to be satisfactory.

The regional director did not abuse his discretion in preparing his Report on Objections on the basis of an investigation, without an evidentiary hearing as to Ross' status as a union agent, and without an evidentiary hearing as to whether the statements attributed to Ross may have influenced employee freedom of choice. The Board did not abuse its discretion in declining to remand for an evidentiary hearing on those issues. The majority opinions are inconsistent with the abuse of discretion standard of review, and an end run around the controlling precedent in this court. As Judge Adams wrote in *ARA Services:*

> Although hearings frequently serve a useful purpose, requiring a hearing regardless of the factual setting promotes undue delay in the administrative process at the expense of the freedom of choice of the workers. . . . Given the sparseness of the factual challenge and the fact that an independent investigation disclosed nothing to augment the unverified statement of one employee, I decline to join an endeavor that would make this already cumbersome process any more protracted.

*ARA Services, Inc.,* 717 F.2d at 70. I would enforce the Board's order.