# NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

# L & J EQUIPMENT COMPANY, INC., Respondent,

v.

# UNITED MINE WORKERS OF AMERICA, Intervenor.

No. 83–3275.

United States Court of Appeals, Third Circuit.

Dec. 27, 1984.

Before ALDISERT, Chief Judge, SEITZ, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER, BECKER, Circuit Judges, and HOFFMAN, Senior District Judge.*

## SUR PETITION FOR REHEARING

The petition for rehearing filed by United Mine Workers of America, Intervenor, in the above-entitled case having been submitted to the judges who participated in the decision of this court, 745 F.2d 224 (3d Cir.1984), and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judge Gibbons would grant rehearing in accordance with his separate statement.

GIBBONS, Circuit Judge, dissenting from the denial of a petition for rehearing.

United Mine Workers of America (UMW), intervenor in this petition by the National Labor Relations Board for enforcement of the Board's order directing the respondent L & J Equipment Co., Inc. (L & J) to bargain with the UMW, now petitions for rehearing of a panel decision denying enforcement and refusing to remand to the Board. The order directing L & J to bargain with the UMW was entered when, following a Board-supervised election in which the UMW prevailed, the Board certified the result and refused to order a new election. To test that ruling L & J refused to bargain. The panel holds that the Board misinterpreted 29 U.S.C. § 152(13) in determining the agency status of certain members of an in-house organizing committee whose activities allegedly interfered with the laboratory conditions which should surround an election. It remands for a redetermination of agency sta-

---

* As to panel rehearing only.

tus under a new and unprecedented interpretation of that section. The practical effect of the remand is to relieve L & J of the obligation to bargain collectively with a Board-certified collective bargaining representative. We know from experience, as does the UMW, that the proceedings on remand and subsequent review proceedings will take several years, during which time the employees of L & J probably will remain unrepresented.

The UMW's petition should be granted. The panel interpretation of section 152(13), in an election context, is inconsistent with prior precedents in this court, inconsistent with the interpretation of the Act which has always been made by the agency charged with its enforcement, and inconsistent with the fundamental policy of the federal labor law, which encourages collective bargaining.

In its Internal Operating Procedures this court announces that:

It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court.

I.O.P. VIII. C. This case apparently falls within the labor law exception to the quoted rule, for it is not possible to reconcile the panel opinion with several prior published opinions of the court dealing with the agency status of members of in-house organizing committees.

L & J complained of the actions, during the election, of several members of the in-house organizing committee, none of whom were union officers or employees. The Board, applying its long-settled doctrine, concluded that while the actions complained of, had they been engaged in by union agents, would have tainted the election, those actions by non-agents should be disregarded. The panel states that it disapproves of "the Board's jurisprudence on this subject," 745 F.2d 224, 234 (3d Cir.1984), and announces an entirely new four-pronged standard for determining agency status of in-house organizing committee members. The express rejection of the "Board's jurisprudence" establishes beyond question that new law is being announced.

In *N.L.R.B. v. ARA Services, Inc.*, 717 F.2d 57 (3d Cir.1983) (in banc), this court, over the dissent of four judges, two of whom are members of the panel in the instant case, expressly approved the "Board's jurisprudence" on the status of members of in-house organizing committees. The principal feature of that jurisprudence is that where professional union organizers play a prominent role in the campaign, employees are unlikely to view in-house organizing committee members as representatives of the union. Under the panel's new test, by contrast, most in-house organizing committee members will be deemed to be union agents. The *ARA* decision detailed this court's reasons for deferring to the Board's view:

All of the law with respect to the atmosphere to be maintained in an election campaign is Board-made under the lawmaking authority delegated to it by Congress. Thus the courts must ordinarily defer to the Board's policy judgments respecting the conduct which will be deemed so coercive as to interfere with employee free choice. Traditionally the Board has been reluctant to set aside elections because of misconduct by third parties, as compared with agents of an employer or a union .... One reason for the Board's approach is that coercion by an employer or a labor organization in the choice of a bargaining representative is itself an unfair labor practice, prohibited by section 158(a)(1), (b)(1). Another is that setting aside an election is an effective deterrent to misconduct by an employer or a union, while it is no deterrent to third parties. There is, therefore, no assurance that a second election will be held in an improved atmosphere.... Another reason is that the Board, with judicial concurrence, has always accorded less weight to conduct which is attributable to neither the Union nor the employer. Threats of fellow employees are

deemed to be less coercive than those of agents of a union or an employer who may have the wherewithal to effectuate them. Employees, moreover, are credited with the ability, from experience in the workplace, to give appropriate weight to possibly impulsive statements of fellow employees in the heat of a campaign.... Perhaps the most important reason for scrutinizing mere employee misconduct by a lower standard than is applied to misconduct by agents of an employer or a union is that expressions of temper and passion may reflect the reality that in a contested election friction is inevitable. Given the nature of inter-employee relations, the Board cannot realistically be expected to create a totally frictionless election environment.... Indeed, insisting that there be no give and take among employees on the subject of the desirability of collective bargaining would in itself be an undue interference with informed employee democracy. Thus the Board's policy of giving lesser weight to instances of third-party misconduct in an electioneering context bears a rational relationship to the underlying policies of the Act, and this court must accept the Board's judgment.

717 F.2d at 66 (citations and footnote omitted). The panel opinion flatly rejects these reasons for deferring to the "Board's jurisprudence," and dramatically expands the range of circumstances in which this court will substitute its judgment for that of the agency. The policy arguments advanced for doing so are essentially the same as those advanced in the *ARA* dissent, which the *ARA* majority rejected. In rejecting them the court in banc reiterated its longstanding position of deference to the "Board's jurisprudence" on the issue, announced as recently as *N.L.R.B. v. Campbell Products Dept.*, 623 F.2d 876 (3d Cir. 1980).

More recently, in *N.L.R.B. v. J-Wood/A Tappan Div.*, 720 F.2d 309 (3d Cir.1983), a case which the panel opinion neglects to mention, this court reiterated its approval of the Board's approach toward activities of in-plant organizing committee members. In *J-Wood* the court remanded for findings, but made it clear that "actions of employees who serve on an in-plant organizing committee are only attributable to the Union where there is additional evidence that the plant committee itself acts on the Union's behalf." 720 F.2d at 314. The panel could point to no evidence from which it might be found that the in-house committee members were union agents. Instead of focusing on the relationship between the actor and the union, in three of the four factors it announces the panel directs the Board to focus on the relationship between the actor and the in-house committee. This is a fundamental change in the law, irreconcilable with the prior precedent in this court. Moreover, it is inconsistent with this court's obligation to defer to the expertise of the agency to which Congress has delegated authority for the supervision of elections of bargaining representatives.

The panel decision is an unfortunate manifestation of an emerging spirit of judicial activism on behalf of employers. Although the panel speaks in terms of employee free choice, the plain fact is that the real beneficiary of the decision is the employer, L & J, which prefers not to bargain collectively with the UMW. Taking sides on economic disputes in the field of labor relations is an inappropriate role for the courts of appeals. As Judge Adams points out in his concurring opinion in *ARA*, the Supreme Court has consistently admonished that we are mandated to enforce Board orders so long as the Board's construction of the statute, even if not required by the Act, is at least permissible under it. 717 F.2d at 70.

I would grant the petition for rehearing and enforce the Board's order.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, joins in the dissent.