NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

HOWARD JOHNSON MOTOR LODGE, Respondent.

No. 82-1141.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1982.

Decided April 22, 1983.

U.Chi.L.Rev. 158 (1981).

Barbara A. Atkins, Counsel for NLRB, Elliott Moore, NLRB, Washington, D.C., for petitioner.

Lawrence C. DiNardo, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for respondent.

Before ESCHBACH and POSNER, Circuit Judges, and GRANT,* Senior District Judge.

ESCHBACH, Circuit Judge.

This case presents the issue whether procedural requirements were satisfied when the National Labor Relations Board ("Board") certified a union as the exclusive bargaining representative of a group of employees at a Howard Johnson Motor Lodge ("Company"). We hold that the Board erred in not ordering a hearing to address the Company's objections to the representation election. We decline, therefore, to en-

force the Board's bargaining order and we remand the case for an evidentiary hearing.

## I. BACKGROUND

On November 10, 1980, Chauffeurs, Teamsters and Helpers, Local Union 364 ("Union") petitioned the Board to hold a representation election at the Howard Johnson Motor Lodge in South Bend, Indiana. After a hearing was held, the Board's Regional Director issued a decision asserting that the Board has jurisdiction over the Company and ordering that an election be conducted. An election was held on January 9, 1981, and the Union received a majority of the votes cast.

On January 16, 1981, the Company filed with the Regional Director objections to the representation election. The Company alleged, among other things, that employees who voted in the election were coerced and intimidated by the pro-union statements and conduct of the motor lodge's head housekeeper, Sandra Paquin. In support of its allegations, the Company submitted the affidavit of William Collins, the lodge's manager.

The Regional Director conducted an ex parte investigation into the merits of the Company's allegations. On February 20, 1981, he issued his decision overruling the Company's objections and certifying the Union as the exclusive bargaining representative of employees at the motor lodge. The Company petitioned the Board to review the Regional Director's decision and, at least, to order a hearing to be held on the Company's allegations. The Company's petition was summarily denied on the ground that no substantial issue warranting review was raised.

To obtain judicial review of the Board's decision, the Company refused to bargain with the Union. The Union subsequently filed an unfair labor practice charge alleging violations of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, *see* 29

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

U.S.C. §§ 158(a)(1) and (5). On September 30, 1981, the Board issued its decision finding violations of these sections and ordering the Company to bargain with the Union. *See* 258 NLRB No. 73 (1981). The Board now requests this court to enforce its order.

## II. THE REQUIREMENT OF A HEARING

■ When a party challenging a representation election files objections raising substantial issues of fact, an evidentiary hearing must be held. *See Louis-Allis Company v. NLRB*, 463 F.2d 512, 520 (7th Cir. 1972); *accord NLRB v. Advanced Systems, Inc.*, 681 F.2d 570, 572 (9th Cir.1982); *Kusan Manufacturing Company v. NLRB*, 673 F.2d 150, 152 (6th Cir.1982); *Season-All Industries v. NLRB*, 654 F.2d 932, 938 (3rd Cir.1981). In other words, the Board may not rely on an ex parte investigation to rebut substantial allegations that, if true, might warrant setting aside the election. *See NLRB v. Belcor, Inc.*, 652 F.2d 856, 859 (9th Cir.1981); *NLRB v. Claxton Manufacturing Company*, 613 F.2d 1364, 1366 (5th Cir.1980). This well-settled principle is founded on both the Due Process clause and the Board's own rules of procedure.[1] *See NLRB v. Bristol Springs Manufacturing Company*, 579 F.2d 704, 707 (2d Cir.1978).

Whether a factual allegation may be termed "substantial" depends, in large part, on the Board's substantive rules governing representation elections. For instance, if a party alleges that a union representative misrepresented the virtues of collective bargaining, that allegation is substantial only if such misrepresentations may warrant setting aside the election. In this case, therefore, the Company's allegations that a supervisor, Sandra Paquin, coerced employees to vote for the Union are substantial only if the Board has indicated that this type of coercive conduct may invalidate an election.

■ The Board has repeatedly expressed serious concern about the pro-union conduct and statements of supervisors. Although the mere participation of a supervisor in the organizational campaign of a union will not warrant setting an election aside, elections may be invalidated in two possible situations: first, when employees are led to believe, because of the supervisor's activities, that the employer favors the union; and second, when employees may be coerced into supporting the union out of fear of future retaliation by the pro-union supervisor. *See Bally's Park Place, Inc.*, 265 N.L.R.B. No. 98 (1982); *The Catholic Medical Center of Brooklyn and Queens*, 245 N.L.R.B. 808, 810 (1979); *Central Casket Company*, 225 N.L.R.B. 362, 400 (1976); *Turner's Express, Inc.*, 189 N.L.R.B. 106, 107 (1971); *accord NLRB v. Wehrenberg Theatres, Inc.*, 690 F.2d 159, 162 (8th Cir.1982); *ITT Lighting Fixtures, Inc.*, 658 F.2d 934, 937 (2d Cir.1981); *Fall River Savings Bank v. NLRB*, 649 F.2d 50, 56 (1st Cir.1981).

The Board has not expressed an intention in this case to modify the rules governing the pro-union conduct of supervisors. Indeed the Regional Director stated in his decision that the Company's objection would be honored if Sandra Paquin's activities might have "cause[d] employees to want to avoid the displeasure of [Sandra Paquin] in the event of a union defeat."

■ Judged in light of the Board's own rule, we hold that the Company's objection, based on allegations of Sandra Paquin's conduct, did raise a substantial issue of fact warranting an evidentiary hearing. Relying on the affidavit of the lodge's manager and the transcript of the hearing held prior to the representation election, the Company made the following allegations. Sandra Paquin attended an organizational meeting at a union hall where she signed, as did other employees, a union authorization card. During the organizational campaign, Sandra Paquin distributed union buttons to employees to wear while working. The pro-union activities became explicitly coercive when, according to the lodge manager's af-

---

1. On September 15, 1981, the Board amended its rules of procedure to make clear that an evidentiary hearing must be held if objections to a representation election raise substantial factual issues. *See* 46 Fed.Reg. 45922 (1981).

fidavit, Sandra Paquin told an employee that "she was going to be one of the first ones to go if the Union got in."[2] Although this alleged threat was directed to a single employee, the words employed reveal an intent to mete out reprisals to several employees.

Moreover, it appears that supervisor Paquin possessed the authority to support any threats with action. As the head housekeeper, she assigned work to the housekeepers, granted leaves of absence, and was the sole evaluator of the housekeepers' work. To be sure, Sandra Paquin was dismissed by the Company before the election was held. According to the lodge manager's affidavit, however, Sandra Paquin told the other housekeepers that "she was going to get her job back with full back pay."[3] In light of this statement, employees could have reasonably believed that they would be subject to supervisor Paquin's displeasure if the Union failed to win the election.

In *Flint Motor Inn Company,* 194 N.L.R.B. 733 (1971), the Board set aside an election because of a supervisor's conduct that was not as coercive as the alleged conduct in this case. The employer in *Flint Motor Inn Company* objected to a representation election because of the activities of the hotel's chef, Mr. Gibbons. The Board, in setting the election aside, held:

> While the record does not show Gibbons gave any indication to employees that he would use his authority as supervisor to punish those who failed to support the Union, we believe, given Gibbons' considerable supervisory authority and his active and outspoken support of the Union throughout the organizational campaign, that there is a reasonable "possibility that [his] conduct could coerce an employee into supporting the union."

*Id.* at 734 (quoting *Turner's Express, Inc.,* 189 N.L.R.B. 106, 107 (1971)). Supervisor Paquin not only actively supported the Union throughout the organizational campaign, she allegedly threatened a subordinate.

Moreover, in *Marconi, Inc.,* 251 N.L.R.B. 46 (1980), the Board invalidated an election where a supervisor signed and distributed union authorization cards and told employees that if the union lost the election, the union would request the Immigration and Naturalization Service to investigate the employees. The Board held that the supervisor's conduct "constitutes interference with the employees' free election choice and warrants setting aside the election." *Id.* at 46. Perhaps the very same thing could be said in the instant case if the Company's allegations prove true. An evidentiary hearing is therefore required to address the Company's objection based on supervisor Paquin's pro-union conduct.

■ Finally, we reject the Board's contention that the Company is estopped from raising an objection based on Sandra Paquin's conduct. The Regional Director found such estoppel by applying the Board's rule that when pro-union conduct of a supervisor is known to an employer, but the employer takes no action to dissipate the coercive effect of the conduct, the supervisor's activities cannot be the basis for setting aside the election, *see Diversified Products Corporation,* 199 N.L.R.B. 1024 (1972). We believe, however, that the finding of estoppel in this case is not supported by substantial evidence. *See generally Mosey Manufacturing Company v. NLRB,* 701 F.2d 610 (7th Cir.1983) (*en banc*) (judicial review of Board's application of a rule to a particular case is governed by the "substantial evidence" test). After learning of Sandra Paquin's conduct, the Company sent a letter

---

2. The allegations in the lodge manager's affidavit are, in large part, hearsay. Given the difficulties in obtaining firsthand accounts of illegitimate activity, however, hearsay evidence may not be disregarded when deciding whether an objection raises a substantial factual issue. *See Anchor Inns, Inc. v. NLRB,* 644 F.2d 292, 297–98 (3rd Cir.1981).

3. The Board has determined that the Company committed an unfair labor practice when it dismissed Sandra Paquin. The Board has ordered her reinstatement and the First Circuit enforced that order on March 2, 1983. *See Howard Johnson Company v. NLRB,* 702 F.2d 1 (1st Cir.1983).

to the Regional Director requesting an investigation into supervisor Paquin's activities. Furthermore, the Company assured its employees that the Company would not punish or reward employees based on their views of union representation. Finally, the Company dismissed Sandra Paquin from her position as head housekeeper. It can hardly be asserted, therefore, that the Company took no remedial actions to dissipate the coercive effect of Sandra Paquin's pro-union conduct.

### III. THE RECORD BEFORE THE BOARD

In the course of his ex parte investigation into the Company's objections to the election, the Regional Director secured the affidavits of several of the Company's employees. Excerpts of these affidavits were reproduced in the Regional Director's decision; it is apparent that the Regional Director relied, to some extent, on these affidavits when he overruled the Company's objection based on the conduct of supervisor Paquin. The affidavits, however, were not forwarded to the Board when it decided to let the Regional Director's decision stand. Relying on our decision in *NLRB v. Allis-Chalmers Corp.*, 680 F.2d 1166 (7th Cir. 1982), the Company therefore contends that the Board failed to fulfill its statutory duty to review the record on which the Regional Director relied.

In light of our decision to remand this case for an evidentiary hearing, we find it unnecessary to hold that the Board erred in sustaining the Regional Director's decision without having the benefit of the Regional Director's entire investigative file. Once a hearing is held and a decision is rendered, if a request for review by the Board is made, all transcripts, exhibits, briefs, and the like, will be transmitted to the Board. *See* 29 C.F.R. § 102.68 (1982). The Board, therefore, will have a complete record on which to base its decision.

### IV.

For the reasons expressed in this opinion, we deny enforcement of the Board's bargaining order. We remand the case to the Board to hold an evidentiary hearing on the Company's objection that the pro-union conduct of a supervisor warrants setting the representation election aside.