**ST. ELIZABETH HOSPITAL, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–2398.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1983.

Decided Aug. 23, 1983.

James A. Burns, Jr., and Robert J. Mignin, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for petitioner.

John D. Burgoyne, Asst. Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Before BAUER and WOOD, Circuit Judges, and BROWN, Senior Judge.[*]

BAUER, Circuit Judge.

St. Elizabeth Hospital, which is owned and operated by the Franciscan Sisters Health Care Corporation,[1] petitions for review of an order of the National Labor Relations Board (NLRB or Board) requiring the hospital to bargain collectively with the Chauffeurs, Teamsters and Helpers Local 26 (the union).[2] The NLRB cross-petitions for enforcement. St. Elizabeth contends that the order should not be enforced because: (1) the first amendment precludes NLRB jurisdiction; (2) Local 26 is an inappropriate bargaining unit; and (3) the election approving Local 26 as the certified collective bargaining representative should be set aside as improperly conducted. For reasons stated below we hold that the NLRB has jurisdiction and remand this case to the agency for an evidentiary hearing on the remaining issues.

In July, 1980, the union filed a petition with the NLRB seeking to represent the hospital's Boiler Room and Maintenance employees. The hospital and the union stipulated, among other things, that the Maintenance, Laundry and Linen Department employees constituted an appropriate collective bargaining unit and that the hospital was an employer engaged in commerce within the meaning of the National Labor Relations Act. 29 U.S.C. § 151 et seq. An election was held on September 25, 1980; the union won by a vote of 17 to 13. Three ballots were challenged. Thereafter the hospital filed timely objections and an administrative investigation followed. The NLRB Regional Director recommended that the hospital's objections be overruled and that the union be certified. The NLRB adopted the Director's recommendations. Despite union certification the hospital refused to bargain and the NLRB General Counsel issued a complaint against the hospital, alleging that its refusal to bargain violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (5) (1974). The NLRB held that the hospital's refusal to bargain constituted an unfair labor practice and ordered the hospital to honor the union's request to bargain. This appeal followed.

I

St. Elizabeth argues that the NLRB unconstitutionally exceeded its jurisdiction when it ordered the hospital to engage in collective bargaining with Local 26. Relying on *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), the hospital maintains that the NLRB's assertion of jurisdiction will "inevitably create an impermissible risk of government entanglement with the religious functioning of the hospital." Petitioner's br. at 12. In contrast, the NLRB asserts that the hospital waived the jurisdictional issue by: (1) stipulating to all the facts necessary to support NLRB jurisdiction; and (2) failing to raise the challenge until after the union had won the election. The NLRB also argues that even if the jurisdictional challenge was not waived, it has authority to assert jurisdiction over religious employers where, as here, the employ-

---

[*] The Honorable Bailey Brown, Senior Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

1. The Franciscan Sisters Health Care Corporation is an Illinois not-for-profit corporation con-

trolled by the Order of the Franciscan Sisters of the Sacred Heart.

2. Local 26 is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

er is engaged in secular operations substantially affecting commerce.

While the union concedes that "as a general proposition, the jurisdiction of the Board ... may be questioned at any time," it maintains that the facts upon which the jurisdictional challenge depends must be raised at "the earliest stage appropriate under Board procedures." Respondent's br. at 6. Because the facts in the stipulation [3] focused on the hospital's secular role rather than on the hospital's religious mission, the NLRB insists that the hospital is barred from raising the challenge here.

■ We cannot agree. First, although the stipulation did not state that St. Elizabeth was a religious institution, the hospital's name connotes religious affiliation and nothing in the record indicates that its religious affiliation was not known to all parties. Thus, we find no merit in the NLRB's argument that the facts upon which the jurisdictional challenge is based were not raised in a timely fashion. More important, while failure to raise a constitutional challenge to NLRB jurisdiction until the unfair labor practice hearing may waive the jurisdictional challenge, *St. Anthony Hospital Systems v. NLRB,* 655 F.2d 1028 (10th Cir. 1981), *modified sub nom. Beth Israel Hospital and Geriatric Center v. NLRB,* 688 F.2d 697 (10th Cir.), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982), St. Elizabeth raised the issue in the representation proceeding. Because the hospital did not wait until the enforcement proceeding to first raise its constitutional challenge, the jurisdictional issue is properly before this court. *St. Elizabeth Community Hospital v. NLRB,* 626 F.2d 123 (9th Cir.1980).

■ Determination of whether NLRB regulation of religiously affiliated institutions violates the first amendment turns on the nature of the institution's activity. Where the institution's primary activity is secular, assertion of NLRB jurisdiction does not violate the institution's first amendment rights. *Tressler Lutheran Home for Children v. NLRB,* 677 F.2d 302 (3d Cir. 1982); *NLRB v. St. Louis Christian Home,* 663 F.2d 60 (8th Cir.1981). Where the primary function of the institution is integrally related to its religious mission, the first amendment precludes NLRB interference. *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1978).

■ The record here reveals that the hospital operates essentially as a nonreligious institution. Its stated purpose is to provide health care services to the general public. These services are available to all members of the community regardless of religious affiliation. Thus, while St. Elizabeth's health care is administered in a religious atmosphere, that atmosphere is secondary to the hospital's actual physical care, which is comparable to health care furnished by secular hospitals. *Tressler Lutheran Home for Children v. NLRB,* 677 F.2d 302 (3d Cir.1982). Based on this record, we hold that the involvement of the NLRB in mediating collective bargaining questions does not violate the hospital's first amendment rights. *St. Elizabeth Community Hospital v. NLRB,* 708 F.2d 1436 (9th Cir.1983); *NLRB v. St. Louis Christian Home,* 663 F.2d 60 (8th Cir.1981).

We do not believe that *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1978) compels a contrary conclusion. *Catholic Bishop* involved the NLRB's attempt to order the Bishop of Chicago to bargain collectively with lay teachers in the diocesan high schools. Concluding that: (1) parochial schools involve substantial religious activity; (2) teachers in these schools have a critical role in fulfilling the schools' religious mission; and (3) the employment relationships in this environment differ from those in nonreligious schools, the Supreme Court held that the NLRB exceeded its jurisdiction. The Court also found no evidence that Congress in-

---

**3.** The stipulation stated that the hospital was: (1) a nonprofit corporation engaged in providing health care services to the general public; (2) received goods from other states in excess of $50,000; (3) grossed more than $500,000; and (4) was an employe engaged in commerce within the meaning of Section 2(6) and (7) of the National Labor Relations Act.

tended to bring religious schools within the scope of the National Labor Relations Act.

In contrast, Congress specifically amended the National Labor Relations Act to include non-profit hospitals, 29 U.S.C. § 152(14). Moreover, Congress rejected a provision in that amendment excluding hospitals operated by religious organizations, concluding that religiously affiliated hospitals operated in essentially the same way as nonreligious hospitals. 120 Cong.Rec. 12950 (1974).[4] Accordingly, *Catholic Bishop* does not control.

## II

■ The next consideration is whether the unit in which the election was conducted was inappropriate. The parties are in general agreement that pre-election stipulations should be given effect unless they contravene the provisions or purposes of the National Labor Relations Act or well-settled NLRB policies. Petitioner's br. at 25; respondent's br. at 17. The Regional Director, while noting that Congress had warned against the proliferations of bargaining units in health care institutions, concluded that the stipulated unit was consistent with that mandate. The Director did not, however, cite any facts to support this conclusion. On the other hand, the hospital argues that the certified unit violates the congressional mandate because it encompasses only thirty-four Maintenance, Laundry and Linen Department employees while excluding almost one hundred employees from other service departments.

Nothing in the record indicates that the NLRB gave more than mere lip service to the congressional directive cautioning against the creation of too many bargaining units; it has failed to demonstrate how it considered the congressional directive or why it concluded the directive had been satisfied. *Mary Thompson Hospital, Inc. v.*

*NLRB,* 621 F.2d 858 (7th Cir.1980). Thus, on the record before us we cannot discern whether or not the certified unit is consistent with the congressional mandate. Accordingly, we remand this issue for an evidentiary hearing.

## III

Finally, we consider the hospital's contention that the election recognizing Local 26 as the collective bargaining unit should be set aside because of the union's pre-election conduct. Our standard of review is whether the Board's decision is supported by "substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e); *Mosey Manufacturing Co. v. NLRB,* 701 F.2d 610 (7th Cir.1983) (en banc). The hospital charges that the union president made material misrepresentations of fact in a letter mailed to employees three days before the election and in an election-eve speech. It also charges that a union agent unlawfully coerced and threatened employees. These pre-election activities, the union argues, render the election invalid. Similarly, the hospital contends that the presence of two voters who could not read the Board's election notice invalidates the election.

## A

■ The parties disagree as to what standard should be applied in determining whether the union's pre-election activities justify setting aside the election. The hospital argues that the proper test is whether the union made its representations at a time which prevented the hospital from effectively replying. This test, enunciated in *Hollywood Ceramics Co.,* 140 N.L.R.B. 221 (1962), was in effect at the time the Director made his recommendations. Applying the *Hollywood Ceramics* standard, the Director found no material misrepresenta-

---

4. For a more extensive discussion of why the holding in *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1978), does not control collective bargaining in health care institutions, see *St. Elizabeth Community Hospital v. NLRB,* 708 F.2d 1436 (9th Cir.1983), and *NLRB v. St. Louis Christian Home,* 663 F.2d 60 (8th Cir.1981).

tions. On appeal the union argues that stricter standard, enunciated in *Midland National Life Insurance Co.,* 263 N.L.R.B. No. 24, 110 L.R.R.M. 1489 (Aug. 4, 1982), and decided after the Director's recommendations were adopted, should be retroactively applied. Under *Midland,* the NLRB will no longer set aside an election because of misrepresentations; elections will be set aside only where the use of forged documents has deceived employees to the extent that they are unable to evaluate the forgery as propaganda or where campaign conduct, such as threats or promises, interferes with employee free choice.

The hospital charges the union with making two material misrepresentations of fact: (1) that the union had no fines; and (2) that there would be no strikes.[5] The Director concluded that none of these statements amounted to a material misrepresentation because the hospital had ample opportunity to communicate its position on these matters and, thus, even if the statements were misrepresentations, they could not have confused the employees.

The record does not support the Director's conclusion that the union statements did not have significant impact on the election. Because no evidentiary hearing was held it is impossible to determine whether the employees were, in fact, misled by these statements or whether the hospital's opportunities to communicate its position amounted to effective replies to the union statements. On the record before us we cannot determine whether, under the *Hollywood Ceramics* standard, the union is guilty of material misrepresentations of fact.

Moreover, it is likely that the Board would apply the *Midland* standard rather than the *Hollywood Ceramics* standard, for the Board has stated its intention to apply the *Midland* standard to "all pending cases in whatever stage." *Midland National Life*

*Insurance Co.,* 263 N.L.R.B. No. 24 at 21 n. 24, 110 L.R.R.M. 1489, 1494 n. 24. We also are aware, however, of "the Board's inability to decide what standard to use in policing elections—it has changed its collective mind three times in the last five and a half years." *Mosey Manufacturing Co. v. NLRB,* 701 F.2d 610, 613 (7th Cir.1983) (en banc). Because this election was exceedingly close and the ultimate outcome of the controversy may be determined by which standard applies, we remand this issue for a Board determination of whether the newly adopted *Midland* standard applies or whether this case is an extraordinary one calling for an exception to the *Midland* retroactivity rule and whether the election should be set aside because of improper union conduct.

### B

■ The hospital contends that the union is responsible for the conduct of employee Ted Fisher, who strongly supported the union and attempted to coerce another employee voting in the election. It is the hospital's theory that Fisher was a de facto agent of the union and that because his threatening statements were uttered during a representational campaign, the election was not conducted in a free and fair environment.

The record reveals that Fisher and another employee had a history of disagreements over the union and that during a prior campaign, Fisher had accused this employee of "selling out" to the hospital. The record also reveals that just before the election involved in this case, Fisher asked the employee to sign a union authorization card, but refused to allow the employee to take the card home because Fisher should not trust him. Finally, the record reveals that Fisher told the employee: "The Teamsters wouldn't like how you are talking. You're for it or against it—you're with me or

---

**5.** The hospital raised two other charges of material misrepresentations before the Board which it has not raised in this appeal.

you're my enemy." Regional Director's Report on Objections, No. 33–RC–2634, at 10 (Dec. 10, 1980).

While conceding that the union never authorized Fisher's remarks, the hospital contends that employees viewed Fisher as a union agent because he advocated the union and solicited employees to sign authorization cards. The hospital also contends that even if Fisher was not perceived as a union agent, his remarks created a general atmosphere of fear and coercion which prevented a free election.

The Director concluded that Fisher's acts of soliciting employees to sign authorization cards and ardently advocating the union were insufficient to establish that he was a union agent. Reasoning that "it is doubtful that Fisher's alleged remarks would have immediate or any impact on any unit employee," Regional Director's Report on Objections, No. 33–RC–2634, at 12 (Dec. 10, 1980), the Director held that Fisher's conduct did not interfere with "the rational uncoerced selection" of the union as the bargaining representative. The Director did not marshal any facts to buttress his conclusion.

We note that there is considerable disparity between the parties' description of the pre-election conversations between Fisher and the other employee. Fisher denies making most of the remarks the hospital attributes to him. He does concede, however, that he announced that if he were elected shop steward he would drag his feet in representing somebody who had opposed the union. We also note that the election was a close one and that any improper conduct easily might have changed the outcome. Consideration of the closeness of the election in conjunction with the parties' contradictory statements describing Fisher's conduct and the Director's unsupported statement that Fisher's remarks had no effect on the outcome of the election convinces us of the need for an evidentiary hearing to ascertain whether, and to what extent, Fisher's remarks interfered with the employees' free choice of their bargaining agent.

## C

Finally, the hospital complains that two or more employees who voted in the election were unable to read the NLRB's Notice of Election and, as a result, were unable to cast informed ballots. The hospital has offered evidence to substantiate its claim.

The Director held that the ability to read the Notice of Election was not required. He stated that, although certain employees may have been unable to read the official notices, he assumed that all employees had sufficient opportunity to discuss the election and obtain the information necessary to ensure an informed choice. He based this conclusion on a review of the ballots, which he found to be clearly and accurately marked. We do not believe, however, that the ballots alone are sufficient to support the inference that illiterate voters fully comprehended the issues involved and in fact did have the opportunity to make an informed choice. Therefore, this issue is also remanded for the development of a factual record.

## IV

We affirm the Board's decision insofar as it held that the NLRB had jurisdiction. We remand the remaining issues for Board reconsideration after a full evidentiary hearing. Accordingly, the Board's petition for enforcement is

DENIED.