**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SERVICE AMERICAN CORPORATION, a subsidiary of Allegheny Beverage Corporation, Respondent.**

**No. 86–3114.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1987.

Decided March 7, 1988.

192

W. Christian Schumann, Gordon B. Scott, NLRB, Washington, D.C., for petitioner.

Leslie Robert Stellman, John W. Kyle, Benjamin W. Hahn, Littler, Mendelson, Fastiff & Tichy, Baltimore, Md., for respondent.

Before BAUER, Chief Judge, CUDAHY, and POSNER, Circuit Judges.

BAUER, Chief Judge.

We consider in this case whether the National Labor Relations Board (the Board) must conduct an evidentiary hearing on Service America Corporation's (SAC) allegations of union misconduct in a representative election. We hold that it must.

## I.

SAC is a full-line vending company doing business in Indianapolis, Indiana. On July 2, 1985, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 135 (the Union) petitioned the Board's Indianapolis Regional Office for certification as the official bargaining representative of forty-seven SAC food service and warehouse employees. Pursuant to a Stipulation for Certification Upon Consent Election approved by the Board's Regional Director, the Board's Regional Office held an election on September 5, 1985. The Union won. Twenty-four employees voted for union representation; twenty voted against.[1] SAC, however, filed objections to the election, alleging, *inter alia,* that agents of the Union coerced and threatened eligible voters before the election.[2] In support of its objections, SAC submitted affidavits, taken from a number of its employees and the branch manager of its Indianapolis facility, to the Board's Regional Director.

The Director conducted an investigation, during which he obtained additional testimony from some of SAC's witnesses and others. On October 11, 1985, the Regional Director issued a report finding SAC's allegations without merit and recommending that the Board certify the Union as the employees' collective bargaining representative. SAC immediately filed exceptions to the report, urging the Board to set aside the election or, alternatively, to order a hearing on its objections. The Board, however, adopted the Regional Director's report and recommendation, overruled SAC's objections, and certified the Union as the employees' representative.

■ SAC then refused to bargain with the Union, its only avenue to judicial review of the Board's certification of the Union.[3] The Board's General Counsel thereafter issued an unfair labor practice complaint, alleging that SAC violated section 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(5) and (1), by refusing to bargain. In its answer, SAC admitted refusing to bargain with the Union, but claimed that its refusal was not unlawful because the Board's certification was invalid. On May 16, 1986, the General Counsel filed motions to strike portions of SAC's answer and for summary judgment, arguing that SAC's defenses had already been litigated and decided. On May 24, 1986, the Board transferred the proceeding to itself and issued a notice to SAC to show cause why the General Counsel's motion for summary judgment should not be granted. SAC contested the motion on a number of grounds. On August 15, 1986, the Board denied the General Counsel's motion to strike, but granted the motion for summary judgment, finding that SAC's defenses to the unfair labor practice complaint were or could have been litigated in the earlier representation proceeding. The Board also found that SAC had not offered to adduce any newly discovered or previously unavailable evidence, nor alleged any special circumstances requiring the Board to reexamine its decision in the representation proceeding. The Board ordered SAC to bargain with the

1. There was one nondeterminative challenged ballot.

2. The company asserts additional objections, but our decision regarding the company's allegation of pre-election misconduct on the part of union adherents renders discussion of them unnecessary.

3. Because the Board's decision in a representation proceeding is not a final, appealable order, SAC had to obtain judicial review of the decision by the "circuitous method" of refusing to bargain with the Union, thereby exposing itself to an unfair labor practice charge. On appeal from the Board's resolution of the unfair labor practice charges, we may consider the disputed representation election. *See NLRB v. J-Wood/A Tappan Div.,* 720 F.2d 309, 313 n. 5 (3d Cir. 1983).

union and now seeks enforcement of that order.

## II.

■ SAC's allegation that agents of the union coerced and threatened eligible voters during the pre-election campaign is embodied in the affidavits of six SAC employees, identified as Witnesses A through F. SAC's principal witness, A, testified that, before the election, he expressed doubts about the benefits of union representation to employee Chris Mathes in the presence of other employees, at least one of whom was an eligible voter, when Mathes angrily retorted, "God damn it, it's guys like you that keep on telling this bull shit. It's the reason the Union didn't get in last year, and we won't put up with this bull shit this year." A also testified that another Union supporter, employee Rodney Burns, told him before the election that "people that are against the union can be terminated or hurt." According to A, Mathes and Burns were two of three "principal Union supporters" at SAC's Indianapolis facility. In addition, A testified that he signed an authorization card solicited by Burns before the election, and that he believed Burns had solicited authorization cards from other employees as well. Witnesses B, C, D, E, and F, all testified that A gave varying descriptions of Burns's and Mathes's statements to them before the election.[4]

In addition to these affidavits, SAC also submitted to the Director a letter dated June 26, 1985, signed by the Union's Business Representative and addressed to SAC, advising SAC that Burns was one of a group of employees that had authorized the Union to be his collective bargaining agent. The letter also warned that the Union would consider illegal any action taken against any of the listed employees because of their affiliation with the Union.

In his report and recommendation, the Regional Director rejected outright SAC's assertion that Mathes's and Burns's con-

duct was attributable to the Union. The Director found "no evidence of any connection between Chris Mathes and the Union whatsoever" and that the "June 26, 1985, letter and Rodney Burns' other activities in the campaign establish[ed] him as no more than one of 15 employees who engaged in the common cause of supporting the union." Noting that conduct of "rank-and-file" employees is judged under a different standard than that of the parties or their agents, the Regional Director determined that "even fully crediting Witness A and assuming that such statements as he alleges on the part of Burns and Mathes were, in fact, made it is not felt that they, unaccompanied by any other evidence of threats or actual physical assaults or vandalism to property, would warrant setting aside the election."

In reaching his conclusion, the Regional Director considered affidavits obtained during his investigation from the Union's Business Representative and Recording Secretary, in which both officials denied assigning Mathes or Burns any role in the pre-election campaign, or even being acquainted with Mathes or Burns. In addition, the Director considered an affidavit obtained from Mathes, in which Mathes denied threatening employee A, and an affidavit from employee X, who A said was present when Mathes threatened him, in which X also denied that Mathes threatened A. The Regional Director also obtained an affidavit from SAC's branch manager in addition to the one submitted by SAC, in which the branch manager stated that, although Burns and Mathes were very vocal in their support of the union at employee meetings during the election campaign, he had no evidence that either Burns or Mathes worked for the Union or received benefits from it.

## III.

SAC argues that the Regional Director impermissibly relied on the testimony of

---

4. Employee B also stated in her affidavit that during the previous year's election campaign, which the Union lost, her tires were slashed in SAC's parking lot. She also recalled the Union's

business representatives telling those present at a Union meeting during that campaign that the Union could "rough up people who did not support it, or words to that effect."

the Business Representative, the Recording Secretary, and Mathes in ruling on SAC's objections to the election. The company claims that it was entitled, at the very least, to an evidentiary hearing on the issue whether Mathes and Burns were "agents" of the union and, if so, whether their conduct would then warrant setting aside the election.

### A.

A Board-run representation election is presumed valid; the burden is on the objecting party to prove that it was not. *NLRB v. Mattison Machine Works*, 365 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961); *NLRB v. Visual Educom, Inc.*, 486 F.2d 639, 643 (7th Cir.1973). To prevail, the objecting party must show not only that unlawful acts occurred, but that those acts interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election. *Rockwell Mfg. Co., Kearney Div. v. NLRB*, 330 F.2d 795, 797 (7th Cir.), *cert. denied*, 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 94 (1964).

■ A party challenging a representation election is entitled to an evidentiary hearing on its objections, however, if it raises substantial and material issues of fact sufficient to support a prima facie showing of objectionable conduct. 29 C.F.R. § 102.69(d); *NLRB v. Howard Johnson Motor Lodge*, 705 F.2d 932, 934 (7th Cir. 1983). To meet this burden, the objecting party must allege misconduct sufficient to set aside the election under the substantive law of representation elections and proffer "specific evidence from or about specific people." *NLRB v. Douglas County Election Membership Corp.*, 358 F.2d 125, 130 (5th Cir.1966). Once this burden is met, the Board may not overrule the objections on the basis of an ex parte investigation by the Regional Director. *Howard Johnson*, 705 F.2d at 934. As the Third Circuit has held,

> to obtain an evidentiary hearing, the objector's proffer of evidence must prima facie warrant setting aside the election. The proffer may not be conclusory or vague; it must point to specific events and specific people. On the other hand, an evidentiary hearing is not required when, if all the evidence proferred by the objecting party is accepted as true, no ground is produced which would warrant setting aside the election.

*NLRB v. J–Wood/A Tappan Div.*, 720 F.2d 309, 314 (3d Cir.1983).

### B.

Whether objectionable conduct of union supporters is attributable to the union is, of course, a crucial factor bearing on the validity of a representation election. Traditionally, the Board and reviewing courts have been more reluctant to set aside an election because of misconduct by third parties, as compared with agents of the parties. *Tuf-flex Glass, a part of Libbey–Owens–Ford v. NLRB*, 715 F.2d 291, 296 (7th Cir.1983) (*"Libbey–Owens–Ford"*); *Certain–Teed Products Corp. v. NLRB*, 562 F.2d 500, 510–11 (7th Cir.1977).[5] Unfortunately, this court has been less than

---

**5.** The Third Circuit has elaborated on the rationale behind this distinction:

> One reason for the Board's approach is that coercion by an employer or a labor organization in the choice of a bargaining representative is itself an unfair labor practice, prohibited by section 158(a)(1), (b)(1). Another is that setting aside an election is an effective deterrent to misconduct by an employer or a union, while it is no deterrent to third parties. There is, therefore, no assurance that a second election will be held in an improved atmosphere. Another reason is that the Board, with judicial concurrence, has always accorded less weight to conduct which is attributable to neither the Union nor the employer. Threats of fellow employees are

deemed to be less coercive than those of agents of a union or an employer who may have the wherewithal to effectuate them. Employees, moreover, are credited with the ability, from experience in the workplace, to give appropriate weight to possibly impulsive statements of fellow employees in the heat of a campaign. Perhaps the most important reason for scrutinizing mere employee misconduct by a lower standard than is applied to misconduct by agents of an employer or a union is that expressions of temper and passion may reflect the reality that in a contested election friction is inevitable.

*NLRB v. ARA Services, Inc.*, 717 F.2d 57, 67 (3d Cir.1983) (footnote and citations omitted).

clear in its approach to the "agency" question in the union election contest. For example, in *Libbey–Owens–Ford*, we stated that "[t]he test in the union election context is stringent, involving a demonstration that the *union* placed the employee in a position where he appears to act as its representative." 715 F.2d at 296 (emphasis in original). In *NLRB v. Katz*, 701 F.2d 703 (7th Cir.1983), however, we noted that "the rules of agency are liberally construed" in the union election context, and queried whether a union should be able to profit from pre-election employee misconduct, yet disavow responsibility for it. *Id.* at 708. The more liberal approach, however, seems to command the following of a number of circuits that have considered the issue, *see, e.g., NLRB v. L & J Equipment Co., Inc.,* 745 F.2d 224, 232–34, *reh'g denied,* 750 F.2d 25 (3d Cir.1984); *NLRB v. Georgetown Dress Corp.,* 537 F.2d 1239, 1244 (4th Cir.1976); *NLRB v. Tampa Crown Distributors, Inc.,* 272 F.2d 470 (5th Cir.1959); *NLRB v. Advanced Systems, Inc.,* 681 F.2d 570 (9th Cir.1982), and such an approach finds support in 29 U.S.C. § 152(13), which instructs that "[i]n determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

Indeed, despite the *Libbey–Owens–Ford* language and holding to the contrary, other cases in this circuit have favored a liberal construction of agency in the union election context. In *St. Elizabeth Hospital v. NLRB*, 715 F.2d 1193 (7th Cir.1983), an alleged "de facto" agent of the union and another employee had a history of disagreements over the union and, in a prior union campaign, the former accused the latter of "selling out" to the hospital. *Id.* at 1198. During the disputed campaign, the alleged agent asked the same employee to sign a union authorization card and, at one point, told the employee that "[t]he Teamsters wouldn't like how you are talking. You're for it or against it—you're with me or you're my enemy." *Id.* at 1198–99. Although the union never explicitly authorized the alleged agent's remarks, we refused to accept the Regional Director's and Board's conclusion that the evidence failed to raise substantial and material issues of fact concerning whether the election should have been set aside. *Id.* at 1199. We therefore remanded to the Board to conduct an evidentiary hearing on whether the statements made by the alleged agent materially affected the outcome of the representation election. *Id.*

Similarly, in *NLRB v. Urban Telephone Corp.,* 499 F.2d 239 (7th Cir.1974), the alleged agent had initiated contact with the union and asked the union organizer if he could speak to employees about the union. Moreover, the Board admitted that the alleged agent was a " 'conduit' of information" from employees to the union, and the union admitted that it exercised authority over him in selecting him as the "contact man." During the election campaign, the alleged agent threatened that if the union lost and he found out who voted against it, he would "kick ass" and "smash faces." 499 F.2d at 241. Although the alleged agent received no benefits from the union, and union representatives at a meeting with employees denied that he spoke for the union, we rejected the Board's conclusion, based upon testimony at an evidentiary hearing, that the alleged agent's conduct was not attributable to the union. "Because of [the alleged agent's] close connections with the union and the union's failure to repudiate his threats," we denied the Board's application for enforcement of its order to bargain. *Id.* at 244.[6]

---

**6.** We acknowledge that our holding in *Libbey–Owens–Ford* may seem inconsistent with that of *St. Elizabeth's Hospital* and *Urban Telephone.* In *Libbey–Owens–Ford,* a pro-union employee, Arias, threatened to file an unspecified "complaint" against a fellow employee if the latter did not vote for and tell others to vote for the union. With respect to the evidence tying Arias to the union, the Board's hearing officer found that

Arias was the employee who first contacted the union to initiate the organizing campaign, that employees referred to Arias as "the union man" since he was the most vocal union sup-

## IV.

■ Against this background we consider SAC's allegations with respect to Mathes and Burns. First, however, we must object to the manner in which the Regional Director considered the company's objections. As we have noted, the Regional Director is required under the Board's own rules to direct a hearing if the objecting party raises substantial and material issues of fact to support a prima facie showing of objectionable conduct. If the objecting party meets this burden, the Board may not overrule its objections on the basis of an ex parte investigation by the Regional Director. It follows that the Regional Director, upon receiving objections from a party to an election, must first determine whether that party's allegations, accepted as true, prima facie show objectionable conduct. In doing so, the Regional Director cannot rely on rebuttal testimony obtained through his own ex parte investigation without violating the Board's guidelines and fundamental notions of fairness.

■ Here, the Regional Director never took the initial step of accepting as true SAC's allegations concerning Burns's and Mathes's agency status to determine whether a hearing was warranted. Instead, the Regional Director considered evidence culled from his own ex parte investigation to reach his conclusion that Burns's and Mathes's conduct was not attributable to the Union and, in turn, that SAC's objections were without merit. As the Third Circuit has stated, an objecting party

should not be required to establish that its objections must be sustained before it can obtain an evidentiary hearing.

> The whole purpose for the hearing is to inquire into the allegations to determine whether they are meritorious; it makes little sense to expect the employer to prove its case, especially without power of subpoena, to the Regional Director before a hearing will be granted.

*J–Wood/A Tappan Div.*, 720 F.2d at 315. The Regional Director imposed such an unreasonable requirement here and, therefore, abused his discretion. *See J. Wood/A Tappan Div.*, 720 F.2d at 316.

■ Turning to SAC's proffered evidence of Mathes's and Burns's agency status, we reject SAC's argument with respect to Mathes. The mere statement by A that Mathes was a principal Union supporter simply cannot support a claim that his conduct was attributable to the Union. Burns, however, is a closer call. A, as well as other of the company's affiants, testified that Burns was a principal union supporter. In addition, Burns solicited an authorization card from A and, A believed, other employees. Moreover, the Union's letter to SAC identified Burns as one of fifteen employees that had authorized the Union to be their bargaining representative. The same letter warned that any adverse action taken by the company as a result of pro-Union activities would be considered illegal by the Union. In our view, this evidence of agency surpasses that proffered by the hospital

porter at the plant, that Arias aided the union organizer, Miguel Travieso, and was used by him to "get the news" to Tuf–Flex employees, that Arias passed out union authorization cards and campaign literature on company premises, and that at a union meeting Arias sat next to Travieso, but that Arias was never promised nor did he receive any monetary or other benefit from the union.
Based upon these findings by the Board's hearing officer, we found an
> absence of conduct or nonconduct by the union sufficient to signal to employees that Arias was anything more than an enthusiastic supporter helping a full-time organizer.

*Id.* at 296. Thus, because Arias was a rank-and-file employee and not an agent of the union, we found that his conduct did not warrant setting aside the election. *Id.* at 296–97.

As we have already noted, however, *Libbey–Owens–Ford* was decided pursuant to a stringent approach to the agency question, an approach that cuts against the weight of authority in both this and other circuits. In addition, although the evidence tying Arias to the union in *Libbey–Owens–Ford* is similar to that tying Burns to the Union in this case, the evidence with respect to Burns's agency status may be stronger in that the Union here, in its June 26, 1985 letter, warned SAC that adverse action taken against Burns would be considered illegal. Finally, and most important, in *Libbey–Owens–Ford* the Board made its determination on Arias's agency status and, in turn, on the validity of the election, *after* conducting an evidentiary hearing on the company's objections.

in *St. Elizabeth's Hospital* and approaches that proffered by the company in *Urban Telephone.*

In addition, this was a very close election. *See Urban Telephone,* 499 F.2d at 244; *Katz,* 701 F.2d at 709. A two-vote swing here could have changed the 24–20 outcome, and SAC's evidence shows that Burns's threats were disseminated to not just two, but six eligible voters. Based upon these factors, and the Regional Director's abuse of discretion in handling SAC's objections, we find that an evidentiary hearing is warranted.

For these reasons, we deny the Board's petition for enforcement of its order and remand the case to the Board for reconsideration after conducting an evidentiary hearing on SAC's objections to the election.