# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-2929 & 03-3101

BLOOMINGTON-NORMAL SEATING CO.,

*Petitioner-Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent-Cross-Petitioner.*

———————

Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board.
No. 33-CA-13769

———————

ARGUED JANUARY 21, 2004—DECIDED FEBRUARY 5, 2004

———————

Before FLAUM, *Chief Judge*, and POSNER and RIPPLE,
*Circuit Judges*.

FLAUM, *Chief Judge*.  In 2003, the National Labor Rela-
tions Board ("NLRB") concluded that Bloomington-Normal
Seating Company ("the company") had violated the National
Labor Relations Act by threatening to discharge an em-
ployee if he became a member of a labor organization and
by requesting that employees report the solicitation of
union authorization cards. The company now appeals. For
the reasons stated herein, we reject the company's argu-
ments and grant enforcement of the NLRB's order.

I. Background

Bloomington-Normal Seating Company manufactures seats for automobiles. In September 2001, the Local 362 of the Laborers' International Union of North America, AFL-CIO ("the union"), began attempting to represent the company's production and maintenance employees. Prior to this time, there had been no union activity at the company.

On September 5, 2001, supervisor Mark Overfelt noticed employee Russell Sears reading a newspaper. According to the company, Overfelt casually asked Sears what he was reading and when Sears responded, "nothing," Overfelt left. According to Sears, Overfelt approached him, asked him if he was reading the Union News, and then grabbed the paper away from him. Sears testified that Overfelt then told him that if he was trying to start a union he would be "canned."

Sears' version of events was partially confirmed by the testimony of his co-worker and aunt, Shirley Halsey. Halsey testified that on the day Sears brought the Union News to work, she saw Overfelt approach Sears and attempt to grab the paper out of his hands. She then saw Overfelt talk to Sears for a few minutes, but by the time she was near enough to hear the two speaking, the conversation had ended.

Later that day, the company held a meeting to address the employees' unionization efforts. At the meeting, a production manager read a prepared speech which stated in part, "if you are threatened or harassed about signing a union card, I hope you will let us know about it." There is no evidence that any employee ever informed the company that he or she felt threatened or harassed by the union or by other employees.

The union subsequently filed unfair labor practice charges against the company. The Administrative Law Judge

("ALJ") concluded that Overfelt had threatened Sears with discharge if he attempted to unionize. The ALJ also found that the company's speech was an effort to encourage workers to inform the company when other employees were soliciting union support. The NLRB adopted the ALJ's findings and concluded that the company committed unfair labor practices in violation of Section 8(a) of the National Labor Relations Act ("NLRA"). The company now appeals. The NLRB cross-appeals and asks this Court to enforce the NLRB's order that the company cease and desist from engaging in unfair labor practices.

## II. DISCUSSION

We will enforce the NLRB's order if its factual findings are supported by substantial evidence and its conclusions have a reasonable basis in the law. *See Dilling Mech. Contractors, Inc. v. NLRB*, 107 F.3d 521, 523-24 (7th Cir. 1997). This standard requires only that the NLRB produce relevant evidence sufficient for a reasonable person to accept the NLRB's conclusion. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). We owe particular deference to the NLRB's determinations regarding witness credibility, which we do not disturb absent extraordinary circumstances such as "clear bias by the ALJ, utter disregard of uncontroverted sworn testimony, or acceptance of testimony that on its face is incredible." *See NLRB v. Gerig's Dump Trucking, Inc.*, 137 F.3d 936, 941 (7th Cir. 1998).

The company first challenges the NLRB's finding that Overfelt threatened Sears with discharge if Sears engaged in union activities.[1] The company argues that the ALJ did

---

[1]  It is undisputed that it is unlawful for an employer to threaten an employee with discharge if the employee engages in union

(continued...)

not properly assess the credibility of the witnesses because the ALJ did not compare the witnesses' demeanors. The company further argues that Halsey was obviously an incredible witness because she claimed to see Sears and Overfelt but not to hear the conversation between them. Finally, the company contends that even if we grant substantial deference to the ALJ's findings, we should not uphold them because the ALJ relied entirely upon the presumption that current employees who testify against their employer are likely to be truthful.

We conclude that these arguments are without merit. First, the ALJ did assess the credibility of the witnesses when he commented that Sears and Halsey had credible demeanors. Despite the company's arguments to the contrary at oral argument, the ALJ was not required to list the physical characteristics of the witnesses that led to the conclusion that they were credible. Second, the fact that Halsey testified that she could see Overfelt and Sears without hearing them does not make her an incredible witness. The record shows that Halsey has poor hearing and has undergone surgery on both ears. Even if Halsey had perfect hearing, it is not unbelievable that one might be able to see people talking but not be able to hear the conversation. Finally, the ALJ did not rely entirely upon the presumption that current employees testify truthfully against their employers. The ALJ specifically noted that there is no such presumption, but stated that the testimony of current employees is likely to be reliable because the employees are testifying adversely to their pecuniary

---

(...continued)
activity. *See NLRB v. Shelby Mem'l Hosp. Ass'n*, 1 F.3d 550, 560 (7th Cir. 1993). Thus, if Overfelt did threaten to "can" Sears for his union activities, the company violated Section 8(a) of the National Labor Relations Act.

interests. This is in accord with *Flexsteel Industries, Inc.*, 316 N.L.R.B. 745 (1995), which held that a "witness' status as a current employee may be a significant factor" in determining the credibility of the witness. Moreover, in addition to their status as employees, the ALJ also discussed the witnesses' demeanors and lack of motive to lie when deciding to credit their testimony.

Essentially, the company asks us to reweigh the evidence and reach our own conclusions regarding whether Overfelt or Sears and Halsey should be believed. This is not the proper standard of review. *See J.C. Penney Co., Inc. v. NLRB*, 123 F.3d 988, 993 (7th Cir. 1997) ("It is not our place to engage in our own fact finding or supplant the Board's reasonable conclusions 'even though [we] would justifiably have made a different choice had the matter been before [us] *de novo*.' "). We therefore conclude that substantial evidence supports the NLRB's finding that Overfelt threatened Sears with discharge if he aided the union.

The company next challenges the NLRB's finding that the company violated the NLRA by encouraging employees to inform on those who were unionizing.[2] The NLRB's finding was based upon the company's speech to employees, which stated in part: "if you are threatened or harassed about signing a union card, I hope you will let us know about it." The company argues that this speech was not made to discourage unionization, and urges us to safeguard an

---

[2] An employer violates Section 8(a) of the NLRA when the employer's actions have a reasonable tendency to interfere with or coerce employees in the exercise of their protected rights. *See NLRB v. Gerig's Dump Trucking, Inc.*, 137 F.3d 936, 940 (7th Cir. 1998). Both parties apparently agree that encouraging employees to report unionization efforts would be unlawful under Section 8(a); the company challenges only the finding that its speech did encourage employees to turn in fellow employees as union adherents.

employer's right to protect employees from threats and harassment. The NLRB responds that it is not unlawful for an employer to ask employees to report threats, but that any use of the term "harassment" is *per se* a violation of the NLRA because it has the potential for chilling legitimate union activity.

While it is true that we have often found a violation of the NLRA when words such as "pressure" or "harassment" are used, we decline to hold that the use of such words is a *per se* violation. *See NLRB v. Aluminum Casting & Eng'g Co., Inc.*, 230 F.3d 286, 294 (7th Cir. 2000); *NLRB v. Almet, Inc.*, 987 F.2d 445, 453 (7th Cir. 1993). Rather, our cases demonstrate that a fact-based, contextual inquiry is required to determine whether a company has violated the NLRA.

For example, in *Aluminum Casting*, 230 F.3d at 294, a company distributed a memorandum to its employees requesting that the employees notify the company if they were pressured to sign union cards. In addition to the wording of the memorandum, the Court also discussed its timing (after a contested union election, when a new election was imminent), and whether employees had actually been threatened or pressured (at least one employee felt pressured, but not threatened), before concluding that the company had violated the NLRA. Similarly, in *Almet*, 987 F.2d at 452-53, the Court found that a company violated the NLRA when it required employees to report bullying or threats. In addition to the use of the words "bullying or threats," the Court also considered it significant that employees faced discipline if they did not report bullying, and noted that it was important that the company only barred bullying by union supporters.

It is only in evaluating factors such as the timing of the speech, the words used in the speech, whether the speech targeted union supporters, and whether the speech

was directed toward employees who were being threatened, that it can be determined whether a company has violated the NLRA. While such an inquiry does not provide the bright-line rule requested by the NLRB, it balances the two equally important interests of protecting employees while not infringing upon their right to engage in union activities. We therefore must analyze the context of Bloomington-Normal's speech to determine whether substantial evidence supports the NLRB's finding that the speech encouraged employees to report unionization efforts.

We begin by noting that although the company asked employees to report threats or harassment, there was no evidence presented that the company believed any employees had been threatened or harassed by union representatives. In fact, the company first learned of attempts to unionize on the very day of the speech. This cuts against the company's arguments that it was trying to protect its employees' physical safety. After all, as far as the company knew there had been no threats to the safety of the employees. Additionally, the company's speech was inextricably linked to the process of unionization. It was not part of an employee handbook or code of conduct that prohibits harassment generally; rather, the company asked only those "threatened or harassed *about signing a union card*" to come forward. (emphasis added). Moreover, it targeted only union supporters, as those are the ones who approach others about signing union cards. Finally, the term "harassment" is an elastic one, and may include protected organizational activity. *See NLRB v. Almet*, 987 F.2d 445, 452 (7th Cir. 1993). Although not dispositive, it certainly does not help Bloomington-Normal that it used such a subjective term when asking employees to notify the company of union activities. Considering that the speech was made immediately upon finding out about the union's presence, without any knowledge of threats or harassment from the union, and targeted only union supporters, it was not

unreasonable for the NLRB to conclude that the speech encouraged employees to report unionization efforts. We therefore conclude that sufficient evidence was presented to support the NLRB's finding that the company violated Section 8(a) of the NLRA.

## III. CONCLUSION

Substantial evidence supports the NLRB's finding that the company violated the National Labor Relations Act when it threatened an employee with discharge if he aided the union and when it encouraged employees to report unionization efforts. Therefore, we DENY the company's petition for review and ENFORCE the NLRB's order in full.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*