# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4121

NATIONAL LABOR RELATIONS BOARD,

*Petitioner*,

*v.*

MICKEY'S LINEN AND TOWEL SUPPLY, INC.,
d/b/a DOMESTIC LINEN AND UNIFORM,

*Respondent.*

On Application for Review of an Order of
the National Labor Relations Board.
No. 33-CA-14877.

SUBMITTED MAY 30, 2006—DECIDED AUGUST 16, 2006

Before POSNER, KANNE, and WOOD, *Circuit Judges*.

KANNE, *Circuit Judge*. The National Labor Relations Board (the "Board") has applied for enforcement of its August 23, 2005 order, No. 33-CA-14877 (the "Order"), issued against Mickey's Linen and Towel Supply, Inc., d/b/a Domestic Linen and Uniform ("Mickey's"). In the Order, the Board found Mickey's refusal to bargain with Teamsters Local 705, a/w International Brotherhood of Teamsters (the "Union") to be an unfair trade practice. Mickey's challenge of the Board's certification of the Union is without merit, and, therefore, we grant the application.

Mickey's, located in Kankakee, Illinois, sells, rents, and cleans uniforms and linens. The Union petitioned the Board to represent a unit of Mickey's full-time and regular part-time laundry production and maintenance employees. On

May 21, 2004, the Board conducted a secret-ballot election in which the Union prevailed by a margin of 22 to 12.

Mickey's objected, contending the election was unfair, and a hearing was set. Despite Mickey's request that the hearing be held near Kankakee, the hearing was scheduled to take place on December 2, 2004, in Peoria, approximately 125 miles from Mickey's plant (about a two-hour drive).

Mickey's objections to the election were founded upon its allegation that a former supervisor named Lynell Watts made racially inflammatory remarks and coerced support for unionizing. Mickey's produced three employees who voted in the election who testified that Watts uttered remarks such as "it looks like the blacks against the whites"; "all black people should stick together"; "the blacks stick together"; and "[the black voters] had it wrapped up." Mickey's fourth witness, a manager, authenticated (without his personal knowledge) employees' written statements to that effect. Watts testified that he never made the statements, and two of the Union's witnesses corroborated Watts's version of events.

The hearing officer recommended to the Board that Mickey's objections be overruled. Mickey's filed exceptions to the hearing officer's findings and recommendations, but to no avail. The Board adopted the hearing officer's findings and certified the Union on March 29, 2005.

"Refusing to bargain is the only way for an employer to get judicial review of an NLRB decision upholding an election and certifying a union." *NLRB v. AmeriCold Logistics, Inc.*, 214 F.3d 935, 937 (7th Cir. 2000) (citing *NLRB v. Serv. Am. Corp.*, 841 F.2d 191, 193 n.3 (7th Cir. 1988)). Following the certification: (1) Mickey's refused the Union's request to bargain, (2) the Union filed a charge, (3) the Board issued a complaint, (4) Mickey's admitted it refused to bargain but contested the certification, and (5) the Board granted summary judgment against Mickey's

after finding it violated 29 U.S.C. § 158(a)(1) and (5). "That labyrinthian chain of events finally brings us to this appeal, where the real issue is whether the NLRB was right in finding that the [U]nion won the election fair and square." *Id.*

The Board has wide discretion to set rules and procedural safeguards to protect employees' freedom to choose bargaining representatives. *NLRB v. Precise Castings*, 915 F.2d 1160, 1162 (7th Cir. 1990) (citing *NLRB v. A.J. Tower Co.*, 329 U.S. 324 (1946)). A Board-conducted representation election is presumptively valid. *Uniroyal Tech. Corp. v. NLRB*, 98 F.3d 993, 997 (7th Cir. 1996) (citation omitted). Our review of the Board's certification of a collective bargaining agent after an election is "extremely limited," and we will affirm if it is supported by substantial evidence. *NLRB v. Erie Brush & Mfg. Co.*, 406 F.3d 795, 801 (7th Cir. 2005) (citation omitted); *AmeriCold Logistics*, 214 F.3d at 937. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support the conclusion of the Board.'" *SCA Tissue N. Am. LLC v. NLRB*, 371 F.3d 983, 988 (7th Cir. 2004) (quoting *Huck Store Fixture Co. v. NLRB*, 327 F.3d 528, 533 (7th Cir. 2003)). "Where the Board adopts the ALJ's findings of fact and conclusions of law, it is the ALJ's determinations that we review." *Id.* (citing *Sears, Roebuck & Co. v. NLRB*, 349 F.3d 493, 508 (7th Cir. 2003)).

Mickey's must show "that the unlawful acts occurred and 'that those acts interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election.'" *See NLRB v. Chicago Tribune Co.*, 943 F.2d 791, 794 (7th Cir. 1991) (quoting *Serv. Am. Corp.*, 841 F.2d at 195). Thus, Mickey's must demonstrate not only that Watts made the aforementioned remarks, but also that they caused the Union to prevail in the election. Because the parties presented conflicting testimony regarding whether Watts did utter the

remarks, the hearing officer was required to make a credibility determination, which is entitled to great deference and will be upheld absent the most extraordinary circumstances. *See Erie Brush*, 406 F.3d at 801 (citations omitted); *NLRB v. Joy Recovery Tech. Corp.*, 134 F.3d 1307, 1312 (7th Cir. 1998) ("As to credibility determinations when there are two conflicting versions of the same incident, the ALJ's credibility determinations are entitled to deference. We avoid determining credibility on the basis of a cold record.") (quotation omitted).

The hearing officer discredited two of Mickey's witnesses: Don Papineau, who testified that Watts said, "it looks like the Union is the blacks against the whites"; and Denise Wright, who testified that Watts said "all black people should stick together." The hearing officer pointed out that each of these witnesses gave vague and conflicting answers. As for Mickey's third witness, Christine Hardy, the hearing officer expressed "reservations" about her credibility but—assuming Watts did make racially inflammatory statements to her—determined Hardy was not part of the bargaining unit and did not divulge the communication to anyone. A fourth witness, John Betenia, testified he lacked personal knowledge of Watts's conduct, and the hearing officer discredited it as hearsay. In the face of Watts's testimony to the contrary, which was corroborated by two witnesses, the hearing officer concluded Mickey's had not presented sufficient evidence to prove Watts made any of the purported statements.

Beyond its erroneous claim that the hearing officer's credibility determinations are entitled to no deference, Mickey's presents no argument warranting more than minimal discussion. At most, Mickey's points to circumstances in which the hearing officer could have inferred that Watts lied; Mickey's then adds conclusory statements to suggest contradictions in Watts's testimony. Suffice it to say, none of these instances were material to the issue of

whether Watts made the statements, nor were they sufficiently specific to refute Watts's testimony.

There may be some doubt as to Watts's loyalties when he testified (he had been fired), but that is insufficient to overturn the hearing officer's credibility decisions and his conclusion that Mickey's failed to prove any objectionable conduct did occur. The hearing officer stated he made his findings based upon the entire record and his observation of the witnesses, and he was not required to itemize the witnesses' physical characteristics to support his conclusion. *See Bloomington-Normal Seating Co. v. NLRB*, 357 F.3d 692, 695 (7th Cir. 2004). In sum, Mickey's does not explain why it would be extraordinary to conclude Watts told the truth.[1] *See id.* (noting examples of extraordinary circumstances include "'clear bias by the ALJ, utter disregard of uncontroverted sworn testimony, or acceptance of testimony that on its face is incredible'") (quoting *NLRB v. Gerig's Dump Trucking, Inc.*, 137 F.3d 936, 941 (7th Cir. 1998)).

Mickey's argues holding the December 2 hearing in Peoria rather than Kankakee deprived it of the opportunity to produce two additional witnesses, but the issue has not been preserved for our review. "[A] party waives the right to appeal an issue to the NLRB if it did not raise the issue below." *NLRB v. Gen. Teamsters Union Local 662*, 368 F.3d 741, 746 (7th Cir. 2004) (citation omitted). Mickey's points to its November 10 letter to the NLRB regional office, in which it asked, "We assume that the hearing will be in Kankakee, and will begin at 10:00?"

Mickey's could not have raised the issue to the hearing officer on November 10 because the hearing's location had not been established. And Mickey's did nothing when the

---

[1] Of course, we need not consider whether the statements, if made, were indeed of an inflammatory nature.

notice of hearing was issued on November 18. Mickey's attended the hearing, and it was not until after calling all but one of its witnesses that Mickey's first complained about the hearing's location. Mickey's rightfully does not contend such an untimely objection was sufficient to preserve the issue, and the NLRB rightfully refused to consider it.

And even if it were properly before us, there is no reason to find an abuse of discretion. Mickey's alleges that due to the 125-mile distance, it lacked subpoena power under Federal Rule of Civil Procedure 45. But Rule 45 sets a 100-mile limit for subpoenas issued by district courts. Applicable here is 29 U.S.C. § 161(1), which establishes nationwide subpoena authority for the Board. Had Mickey's issued subpoenas compelling these individuals to attend the hearing, they would have been valid.

The Board's application is GRANTED, and its Order will be ENFORCED in full.

A true Copy:

       Teste:

                              _____
                              *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*